**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| |
|---|
| *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
FAY SERVICING, LLC, a Delaware limited liability company; FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation; and DOES 1 through 50, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DAVID SEYMOUR, an individual, and ELLE SEYMOUR, an individual

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
1/12/2021 4:21 PM
By: Terri Chavez, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of California,<br>County of Santa Barbara, Anacopa Division, 1100 Anacopa St., Santa Barbara, CA 93121 | CASE NUMBER: *(Número del Caso):*<br>21CV00110 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Eric K. Yaeckel, Sullivan & Yaeckel Law Group, APC, 2330 Third Ave., San Diego, CA  92101

| DATE:<br>*(Fecha)* | 1/12/2021 | Clerk, by<br>*(Secretario)* | /s/ Terri Chavez | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Fay Servicing, LLC, A Delaware Limited Liability Company
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date)*  1/21/2021

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev  July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | | FOR COURT USE ONLY |
|---|---|---|
| Eric K. Yaeckel CSB#274608<br>SULLIVAN & YAECKEL LAW GROUP, APC<br>2330 Third Avenue, San Diego, CA 92101<br><br>TELEPHONE NO.: 619-702-6760   FAX NO. *(Optional)*: 619-702-6761<br>ATTORNEY FOR *(Name)*: Plaintiffs DAVID SEYMOUR and ELLE SEYMOUR | | **ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Barbara<br>Darrel E. Parker, Executive Officer<br>1/12/2021 4:21 PM<br>By: Terri Chavez, Deputy** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Barbara, CA 93121
BRANCH NAME: Anacapa Division

CASE NAME:
DAVID SEYMOUR   v. FAY SERVICING, LLC et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **21CV00110**<br><br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort | [ ] Other collections (09)<br>[ ] Insurance coverage (18) | [ ] Mass tort (40)<br>[ ] Securities litigation (28) |
| [ ] Asbestos (04)<br>[ ] Product liability (24) | [ ] Other contract (37)<br>**Real Property** | [ ] Environmental/Toxic tort (30)<br>[ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | above listed provisionally complex case<br>types (41) |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08) | [x] Other real property (26)<br>**Unlawful Detainer** | [ ] Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint** |
| [ ] Defamation (13)<br>[ ] Fraud (16) | [ ] Commercial (31)<br>[ ] Residential (32) | [ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19)<br>[ ] Professional negligence (25) | [ ] Drugs (38)<br>**Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35)<br>Employment | [ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11) | [ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | |

2. This case [x] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
   issues that will be time-consuming to resolve   courts in other counties, states, or countries, or in a federal
   c. [x] Substantial amount of documentary evidence   court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Ten (10) Causes of Action relating to Real Property
5. This case [x] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 1-12-2021

ERIC K. YAECKEL
_____
(TYPE OR PRINT NAME)   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
  Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California   **CIVIL CASE COVER SHEET**   Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages; (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD
Non-PI/PD/WD (Other) Tort
    Business Tort/Unfair Business Practice (07)
    Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
    Defamation (e.g., slander, libel) (13)
    Fraud (16)
    Intellectual Property (19)
    Professional Negligence (25)
        Legal Malpractice
        Other Professional Malpractice *(not medical or legal)*
    Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (NAME AND ADDRESS): Eric K. Yaeckel CSB#274608   TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|
| SULLIVAN & YAECKEL LAW GROUP, APC 2330 Third Avenue, San Diego, CA 92101 (619) 702-6760; Fax: (619) 702-6761 ATTORNEY FOR (NAME): Plaintiffs DAVID SEYMOUR and ELLE SEYMOUR | ELECTRONICALLY FILED Superior Court of California County of Santa Barbara |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA | Darrel E. Parker, Executive Officer |
|---|---|
| ☒ Santa Barbara–Anacapa ☐ Santa Maria-Cook ☐ Lompoc Division 1100 Anacapa Street   312-C East Cook Street   115 Civic Center Plaza Santa Barbara, CA 93101   Santa Maria, CA 93454   Lompoc, CA 93436 | 1/12/2021 4:21 PM By: Terri Chavez, Deputy |

| PLAINTIFF: DAVID SEYMOUR, et al. DEFENDANT: FAY SERVICING, LLC, et al. | |
|---|---|

| CIVIL CASE COVER SHEET ADDENDUM | CASE NUMBER: 21CV00110 |
|---|---|

Santa Barbara County Superior Court Local Rule, rule 201 divides Santa Barbara County geographically into two separate regions referred to as "South County" and "North County," the boundaries of which are more particularly defined in rule 201. "South County" includes the cities of Carpinteria, Santa Barbara, and Goleta; "North County" includes the cities of Santa Maria, Lompoc, Buellton and Solvang. A map depicting this geographical division is contained in Appendix 1 to the local rules.

Local Rule 203 provides: "When, under California law, 'North County' would be a 'proper county' for venue purposes, all filings for such matters shall be in the appropriate division of the Clerk's office in North County. All other filings shall be made in the Clerk's office in the appropriate division of the Court in South County. The title of the Court required to be placed on the first page of documents pursuant to CRC 2.111 includes the name of the appropriate Court division."

A plaintiff filing a new complaint or petition is required by Local Rule 1310 to complete and file this Civil Case Cover Sheet Addendum to state the basis for filing in North County or South County.

The undersigned represents to the Court:

This action is filed in   ☐ North County   ☒ South County   because venue is proper in this region for the following reason(s):

☐ A defendant resides or has its principal place of business in this region at: _____

☒ The personal injury, damage to property, or breach of contract that is claimed in the complaint occurred in this region at: 3077 Santa Ynez Avenue, Santa Ynez, CA 93460

☐ There is a related case filed with the court in this region (e.g., the related personal injury action to a petition to transfer structured settlement payments) [identify case, including case number]: _____

☐ Venue is otherwise proper in this region because [explain]: _____

Dated: 1-12-2021

Signature of Plaintiff or Plaintiff's Counsel

1 | William B. Sullivan [CSB No. 171637]
helen@sullivanlawgroupapc.com
2 | Eric K. Yaeckel [CSB No. 274608]
vaeckel@sullivanlawgroupapc.com
3 | Ryan T. Kuhn [CSB No. 324538]
4 | ryan@sullivanlawgroupapc.com
**SULLIVAN & YAECKEL LAW GROUP, APC**
5 | 2330 Third Avenue
San Diego, California 92101
6 | phone: (619) 702-6760 ¦ fax: (619) 702-6761

7
Derik N. Lewis (SBN 219981)
8 | dlewis@VantisLaw.com
**VANTIS LAW FIRM, APC**
9 | 120 Vantis Drive, Suite 300
Aliso Viejo, California 92656
10 | phone: (949) 216-0935 ¦ fax: (949) 296-0935

11
Attorneys for Plaintiffs
12 | David Seymour and Elle Seymour

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
1/12/2021 4:21 PM
By: Terri Chavez, Deputy

13 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14 | **COUNTY OF SANTA BARBARA**

15 | DAVID SEYMOUR, an individual, and
ELLE SEYMOUR, an individual;

16

17 | Plaintiffs,

18 | vs.

19 | FAY SERVICING, LLC, a Delaware
limited liability company; FIRST
20 | AMERICAN TITLE INSURANCE
COMPANY, a California corporation; and
21 | DOES 1 through 50, Inclusive,

22 | Defendants.

23

24

25

26

27

28

Case No.     21CV00110

HON.

PROPOSED CLASS ACTION

**COMPLAINT FOR:**

1) **VIOLATIONS OF REGULATION X OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**
2) **VIOLATIONS OF CALIFORNIA'S HOMEOWNER BILL OF RIGHTS (SERVICER)**
3) **VIOLATIONS OF CALIFORNIA'S HOMEOWNER BILL OF RIGHTS (TRUSTEE)**
4) **VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (SERVICER)**
5) **VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (TRUSTEE)**
6) **VIOLATIONS OF THE CALIFORNIA**

1

1

2

3

4

5

6

7

8

9

**ROSENTHAL ACT**
7) **NEGLIGENT LOAN SERVICING**
8) **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
9) **UNFAIR PRACTICES UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200, ET SEQ.**
10) **DECLARATORY RELIEF**

(DEMAND FOR JURY TRIAL)

Date Action Filed:
Trial Date: Not Set

10

11

12

Plaintiffs David Seymour and Elle Seymour (*"Plaintiffs"*) bring this complaint against FAY SERVICING, LLC, and DOES 1 through 50 inclusive (*"Defendants"*), and each of them, and allege as follows:

13

## THE PARTIES

14

15

16

17

18

1.      Plaintiffs are and were at all times material hereto individuals residing in Santa Barbara County, California. Plaintiffs own the residential real property commonly known as 3077 Santa Ynez Ave., Santa Ynez, CA 93460, APN 141-330-044 (the *"Property"*) and have at all relevant times occupied that property as Plaintiffs' principal residence.  At all times material hereto, Plaintiffs were over the age of 65.

19

20

21

22

23

24

2.      Plaintiffs are informed and believe and based thereon allege that Defendant FAY SERVICING, LLC. (*"Servicer"*) is, and at all times relevant herein was, a limited liability company organized and existing in the State of Delaware and doing business throughout the State of California, and at all times relevant herein was actively engaged in the business of making, arranging, holding and/or servicing loans, in Santa Barbara County, California and/or involving real properties located in Santa Barbara County, California.

25

26

27

3.      Plaintiffs are informed and believe and based thereon allege that Servicer conducted within the most recent regulatory reporting period, more than 175 foreclosures on residential real properties of four or fewer dwellings located in California.

28

4.      Plaintiffs are informed and believe and based thereon allege that Servicer and its affiliated service more than 5,000 mortgage loans.

2

**CLASS ACTION COMPLAINT**

1       5.     Plaintiffs are informed and believe and based thereon allege that Defendant FIRST
2 AMERICAN TITLE INSURANCE COMPANY (*"Trustee"*) is, and at all times relevant hereto
3 was, a corporation organized and existing under the laws of the State of Nebraska and doing
4 business in the State of California, actively engaged in the business of acting as a trustee under
5 Deeds of Trust secured by real property in Santa Barbara County, California and/or involving real
6 properties located in Santa Barbara County, California.

7       6.     The true names and capacities, whether individual, corporate, associate or otherwise,
8 of the defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiffs at this
9 time, and DOES 1 through 50 are therefore sued by such fictitious names.   Plaintiffs will, with
10 leave of court if required, amend this complaint to set forth the true names and capacities of such
11 fictitiously-named defendants when the same have been ascertained.   Plaintiffs are informed and
12 believe and based thereon allege that each such fictitiously-named defendant is responsible in some
13 manner for the acts and occurrences hereinafter alleged.

14      7.     Plaintiffs are informed and believe and based thereon allege that, at all times herein
15 mentioned, each of the Defendants, including the DOE Defendants, was the agent, servant, officer,
16 representative, employee and/or alter-ego of each of the remaining Defendants and was at all times
17 acting within the course and scope of such relationship, or was in some way the cause of Plaintiffs'
18 harm and injury.

19      8.     Servicer,  Trustee  and  DOES  1-50  are  collectively  referred  to  herein  as
20 *"Defendants."*

21 **MORTGAGE SERVICING BACKGROUND**

22      9.     The  residential  mortgage  market  is  the  largest  market  for  consumer  financial
23 products in the United States with over \$10 trillion in loans outstanding. Mortgage servicers play a
24 critical role in the mortgage market, manning the front lines in the day-to-day management of
25 mortgage loans for banks, lenders and investors. The majority of mortgage loans serviced by
26 mortgage servicers are owned by investors of securitized loans.

27     10.    Servicers are responsible for sending monthly mortgage statements, collecting and
28 distributing mortgage payments, maintaining and disbursing funds from escrow accounts for

1  payment of insurance and property taxes, reporting to creditors and investors, and interacting with
2  borrowers regarding servicing questions and concerns.

3      11.    Services are also specifically responsible for administering collection efforts after a
4  borrower default and pursuing foreclosure, as well as overseeing and implementing loss mitigation
5  programs and foreclosure preventions options to assist borrowers in avoiding default, delinquency
6  and foreclosure.

7      12.    Mortgage servicing can be performed by banks or non-bank entities depending on
8  the mortgage product and business model. Some lenders make loans and conduct all the servicing
9  on those loans. Other lenders will sell their interest in the mortgage loans but retain the servicing
10 rights to collect the fees as a servicing business. In other cases, mortgage servicers have no role in
11 loan origination or ownership at all and simply service mortgages for third-party lenders. These
12 third-party mortgage servicers are hired to either service mortgages in a lender's portfolio or they
13 can purchase the mortgage servicing rights on securitized loans.

14     13.    The rights of the mortgage servicer and the owner of the mortgage are contained in
15 written servicing agreements between the parties. These servicing contracts may specify the
16 circumstances under which a mortgage servicer may offer loan modifications to borrowers.
17 However, these servicing contracts are subject to state and federal laws, rules and regulations
18 regarding mortgage servicing and loss mitigation processing.

19     14.    Compensation models for mortgage servicing may vary, but servicers generally
20 recoup their investment in purchasing servicing rights and earn a profit through the following: (i) a
21 net servicing fee, which is usually expressed as a constant rate assessed on unpaid mortgage
22 balances; (ii) interest float on escrow accounts prior to disbursement; (iii) charging and collecting
23 fees allowed under the mortgage documents or for administrative functions such as responding to
24 borrower requests, and (iv) marketing other products and services to borrowers.

25     15.    Under this compensation model, servicers are effectively compensated for
26 functioning as collectors and processors with little attention to customer service or borrower
27 satisfaction. Furthermore, borrowers have no ability to select or change servicers and therefore
28 have little sway in the functions or service levels of these servicers. Servicers simply compete for

1  business by offering loan owners lower pricing on the servicing performed and, in doing so, reduce
2  the available financial resources to allocate toward borrower satisfaction and regulatory
3  compliance.

4      16.    Intensifying the divide between a servicer's motivation for profits and the
5  borrower's desire for better service is the often-unknown fact that servicers earn additional revenue
6  from various fees assessed on borrowers such as late fees and administrative functions like
7  providing payoff statements, processing direct payments and other borrower-initiated services.
8  Therefore, servicers have an incentive to seek out opportunities to impose fees on the borrower.

9      17.    The inherent conflicts of interest and extreme pressure related to higher volumes and
10  lower pricing in the mortgage servicing industry came to a head when the real estate market
11  imploded in 2007-2008. After the 2007-2008 global financial crisis, and during the resulting Great
12  Recession, the number of mortgage defaults in the United States surged to historic levels.
13  Servicers were unable to handle the eruption of delinquent loans, mortgage modification requests,
14  and foreclosures.    Delinquency rates nearly doubled from 2007 to 2010 and servicers had
15  inadequate procedures and infrastructure to handle the upturn.    Mortgage servicers were flooded
16  with loss mitigation requests from struggling borrowers.

17                          **LOSS MITIGATION DURING**

18                          **THE GREAT RECESSION**

19      18.    A loss mitigation request is a plea for help from a borrower in financial difficulty
20  who needs accommodation on his or her mortgage to avoid delinquency, default and/or foreclosure.
21  Loss mitigation can take various forms ranging from temporary forbearance to more permanent
22  changes in the interest rate, loan balance or length of repayment, all with the intent of allowing the
23  borrower to retain ownership of their home. In situations where the borrower is no longer able to
24  afford the home, loss mitigation can still assist in avoiding a punishing foreclosure by pursuing a
25  short sale or deed-in-lieu of foreclosure.

26      19.    During this time, servicers lacked the experience and manpower to adequately
27  address the surge of mortgage defaults and resulting tsunami of loss mitigation requests.    The
28  industry-wide deficiencies of mortgage servicers resulted in a number of enforcement actions by

1   federal and state regulators. The failures in mortgage servicing led to various problems for
2   borrowers. Borrowers were unable to obtain information about loss mitigation programs and
3   foreclosure avoidance options. Servicers were unable to process applications for loss mitigation in
4   a timely manner and homeowners ended up in foreclosure and losing their homes by the thousands.
5   Many times, foreclosure proceedings were commenced without proper documentation and without
6   adequate resources to administer the foreclosure process. Servicers also failed to sufficiently
7   oversee third-parties handling foreclosure- related services.

8       20.     Caving into the pressure to process more and more foreclosures, the nation's largest
9   servicers instituted a practice now known as "Robo-signing" whereby servicers improperly had
10  employees sign foreclosure filings en masse to speed up the processing without knowing if those
11  documents were correct. In February 2012, the federal government, 49 state attorneys general and
12  the District of Columbia, entered into the largest consumer financial protection settlement in U.S.
13  history with what were then the nation's five largest mortgage servicers. This "National Mortgage
14  Settlement" provided over $50 billion in relief to distressed borrowers harmed by the wrongful
15  foreclosures and direct payments to the states and the federal government. Similar settlements and
16  consent orders with Federal regulators were later made with many other servicers (including
17  Defendant Fay Servicing, LLC in 2017).

18      21.     The Federal government also instituted programs like the Home Affordable
19  Modification Program (HAMP), which provided eligible borrowers with an opportunity to modify
20  their mortgage loans to make them more affordable. Servicers were eligible for incentive payments
21  for participating in HAMP.

22      22.     Despite these enforcement actions and incentive programs, state and federal
23  regulators were still concerned that the mortgage servicing industry was not adequately looking out
24  for the rights of borrowers facing financial difficulties.

25          **REGULATION X OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**

26      23.     The Real Estate Settlement Procedures Act of 1974 (*"RESPA"*) was originally
27  enacted by Congress based on findings that reforms to the real estate settlement process were
28  necessary to ensure that consumers were provided with greater information on the settlement

1 │ process and to protect consumers against unwarranted settlement charges. The law was amended
2 │ in 1990 to cover persons responsible for servicing federally-related mortgage loans and imposed
3 │ certain obligations on such servicers.

4 │     24.    During the Great Recession, Congress passed the Dodd-Frank Wall Street Reform
5 │ and Consumer Protection Act of 2010 (the *"Dodd-Frank Act"*) which transferred rulemaking
6 │ authority under RESPA to the Consumer Financial Protection Bureau (*"CFPB"*). The Dodd-Frank
7 │ Act also added a section to RESPA giving the CFPB the authority to establish rules on servicers of
8 │ federally-related mortgage loans for the purpose of carrying out the consumer protection goals of
9 │ RESPA.

10 │     25.    In January 2013, the CFPB issued several final rules to address the systemic
11 │ problems in the mortgage servicing industry described above and to implement protections for
12 │ borrowers with regard to mortgage servicing and loss mitigation. These rules amended 12 C.F.R.
13 │ Part 1024, RESPA (Regulation X). The new rules became effective on January 10, 2014.

14 │     26.    Specifically, the new rules implemented procedural protections for borrowers with
15 │ regard to the process of obtaining an evaluation for loss mitigation options and restrictions on the
16 │ foreclosure process while a borrower is being evaluated for a loss mitigation option. See 12 C.F.R.
17 │ § 1024.41. Servicers are prohibited from instituting foreclosure proceedings until a borrower's
18 │ mortgage loan is more than 120 days delinquent. Id. at § 1024.41(f)(1). Further, Servicers are
19 │ prohibited from the practice of "dual tracking" which is the practice of initiating foreclosure
20 │ proceedings while a loss mitigation application is being processed. Id. at § 1024.41(f), (g).
21 │ Regulation X forbids foreclosure on a borrower's home until the mortgage servicer has *evaluated*
22 │ *the borrower for all loss mitigation options*. 12 C.F.R. § 1024.41(c) & (g).

23 │     27.    If a borrower submits a facially complete loss mitigation application before the
24 │ servicer has started the foreclosure process, then the servicer is prohibited from taking any action in
25 │ the foreclosure process until the servicer has sent the borrower the notice required by 12 C.F.R. §
26 │ 1024.41(c)(1)(ii) and the borrower either did not appeal the notice or the borrower's appeal has
27 │ been denied. Id. at § 1024.41(f)(2), (g).

28

1      28.    RESPA requires servicers to follow strict procedures for processing loss mitigation
2 applications and to disclose certain information to borrowers about the status of their application.
3 See 12 C.F.R. § 1024.41. The rules also afford consumers a private right of action against servicers
4 that fail to comply.

5      29.    On June 23, 2020, in response to the Covid-19 pandemic, the CFPB issued an
6 Interim Final Rule (IFR) amending Regulation X's Loss Mitigation Procedures to allow mortgage
7 servicers certain exemptions to the strict requirements triggered upon receiving an application for
8 loss mitigation from a borrower. The new "Anti-Evasion Exception" become effective July 1,
9 2020. 12 C.F.R. § 1024.41(c)(2)(v)(A). This Anti-Evasion Exception offers servicers a temporary
10 exception to the RESPA requirement to "exercise reasonable diligence in obtaining documents and
11 information to complete a loss mitigation application," 12 CFR 1024.41(b)(1).

12                         **CALIFORNIA'S HOMEOWNER BILL OF RIGHTS**

13      30.    In 2012, the California state legislature enacted a series of statutes known as the
14 Homeowner Bill of Rights (***"HBOR"***), effective January 1, 2013, which were meant to ensure fair
15 loan servicing and loss mitigation practices for California homeowners who were in default and
16 facing foreclosure. The laws are designed to guarantee basic fairness and transparency by
17 including restrictions on "dual tracking" (the act of reviewing the borrower for a modification
18 while concurrently processing a foreclosure), requiring the servicer to provide a "single point of
19 contact" for the borrower throughout the entire loss mitigation process until *all foreclosure*
20 *prevention alternatives have been exhausted*, requiring lenders and servicers to verify foreclosure
21 documents before recording the same, and providing a private right of action to borrowers so they
22 can enforce their HBOR rights. Pursuant to HBOR's private right of action, Plaintiffs have
23 standing to bring an action to enforce the provisions found in Cal. Civ. Code §§ 2923.55, 2923.6,
24 2923.7, 2924.9, 2924.10, 2924.11 and 2924.17. *See* Cal. Civ. Code § 2924.12(a)(1).

25                                   **FAY SERVICING, LLC**

26      31.    Fay Servicing, LLC (***"Fay"*** or ***"Servicer"***), is a wholly owned subsidiary of Fay
27 Financial, LLC, is a third-party mortgage servicer which was incorporated in 2008. Fay is
28 headquartered in Chicago, with additional offices in Illinois, Texas and Florida. Fay's servicing

1 business is focused on handling non-performing and distressed mortgage loans which are in default
2 or even in foreclosure. Fay is licensed to service mortgages in all 50 states and the District of
3 Columbia. The company is an approved FNMA servicer, FHLMC seller/servicer, GNMA issuer
4 and HUD servicer.

5     32.     Fay focuses on securing the servicing rights for large portfolios with a high volume
6 of nonperforming and distressed mortgage loans. Fay seeks out these defaulted mortgage loans and
7 the profits that result from servicing those difficult assets.

8     33.     According to Fitch Ratings, as of March 31, 2020, Fay was servicing more than
9 105,500 loans totaling $19.6 billion, including more than 26,000 special serviced loans totaling
10 $5.16 billion. Fay's servicing staff grew to 630 full-time employees as of March 31, 2020 up from
11 589 as of March 31, 2019. (See https://www.fitchratings.com/research/banks/fitch-affirms-fay-
12 servicing-us-rmbs-servicer-ratings-outlook-negative-18-08-2020). Fay also utilizes "off-shore
13 third-party vendors" that provide customer support and borrower interaction.

14     34.     From the Fay website: "Fay Financial, a mortgage servicer that specializes in
15 managing at-risk residential mortgage loans, has been ranked #14 on the Crain's Fast 50 list after
16 being named an honoree in May. Fay Financial's 926% five-year revenue growth rate has placed it
17 among the top of the quickest growing companies in Chicago." (See
18 https://www.fayservicing.com/2018/07/14/fay-ranks-14th-on-crains-fast-50-list/).

19     35.     In April 28, 2020, Fay secured between $5M-$10M in Coronavirus bailout funds
20 from the Paycheck Protection Program to keep employees working during the coronavirus
21 pandemic and to ensure that operations and compliance with the law would not be disrupted. Fay
22 reported 500 jobs and received approval of PPP funds on April 28, 2020. (See
23 https://projects.propublica.org/coronavirus/bailouts/loans/fay-servicing-llc-
24 c123ac490c6fb7cb2eea8e102a7c4430).

25                                               **FAY SERVICING'S PATTERN AND PRACTICE**

26              **OF VIOLATING LOSS MITIGATION RULES AND REGULATIONS**

27     36.     In 2017, the CFPB took action against Fay Servicing for failing to provide mortgage
28 borrowers with the protections against foreclosure that are required by law. According to the

1 CFPB, "[t]he Bureau found that Fay violated the CFPB's servicing rules by keeping borrowers in
2 the dark about critical information about the process of applying for foreclosure relief. The Bureau
3 also found instances where the servicer illegally launched or moved forward with the foreclosure
4 process while borrowers were actively seeking help to save their homes. The CFPB has ordered
5 Fay Servicing to stop its illegal practices and pay up to $1.15 million to harmed borrowers."

6      37.    As of the date of this Complaint, Fay has failed to bring its system for processing
7 loss mitigation applications into compliance with RESPA and the associated laws under HBOR.
8 As described in detail below, Fay has a pattern and practice of failing to provide proper notices and
9 information required by RESPA and HBOR, failing to process loss mitigation applications within
10 the time frames set forth under RESPA and HBOR, failing to keep track of basic documentation in
11 the loss mitigation process, failing to provide borrowers a single point of contact, and failing to
12 provide borrowers with critical protections afforded under RESPA and HBOR.

13      38.    Plaintiffs and members of the proposed classes allege Defendants violated the Real
14 Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, its implementing
15 regulations, 12 C.F.R. §§ 1024.1-1024.41, and California's Homeowner Bill of Rights ("HBOR"),
16 Cal. Civ. Code §2923.5 *et seq*.

17      39.    Plaintiffs and members of the proposed classes submitted loss mitigation
18 applications under RESPA and HBOR. Defendants violated RESPA and HBOR by failing to
19 adhere to the requirements of 12 C.F.R. §§ 1024.40-1024.41 and Cal. Civ. Code §§ 2923.6, 2923.7,
20 2924.10, 2924.11 and 2924.17 with respect to the Plaintiffs and class members' loss mitigation
21 applications.

22                   **PRELIMINARY ALLEGATIONS - NAMED PLAINTIFFS' FACTS**

23      40.    Plaintiffs purchased the Property in 1999 and took title pursuant to a Grant Deed
24 recorded on July 14, 1999, in official records of Santa Barbara County, California (the *"Official*
25 *Records"*) as document number 1999-0057461.

26      41.    On or about December 13, 2006, Plaintiff executed a promissory note (*"Note"*)
27 evidencing a loan made to Plaintiff in the amount of $735,000 (the *"Loan"*) which is secured by a
28

1   deed of trust (the *"Deed of Trust"*) encumbering the Property and recorded in the Official Records
2   on December 20, 2006 as document number 2006-0098601.

3      42.    The Loan was made for Plaintiffs' personal, family or household purposes and is a
4   first-lien mortgage secured by Plaintiffs' owner-occupied principal residence.

5      43.    The original trustee under the Deed of Trust was Golden West Savings Association
6   Service Co., a California corporation. (*"Original Trustee"*). The original lender and beneficiary
7   under the Deed of Trust was World Savings Bank, FSB. (*"Original Lender"*).

8      44.    At some point after 2006, the Original Lender and all of its assets, including the
9   Loan, were purchased or otherwise acquired by Wells Fargo Bank, N.A. and, as of January 2020,
10   the Loan was held and owned by "Wells Fargo Bank, N.A., S/B/M to Wells Fargo Bank
11   Southwest, N.A., F/K/A Wachovia Mortgage, FSB, F/K/A World Savings Bank, FSB."

12      45.    On February 24, 2020, Wells Fargo Bank, N.A. sold the Loan and assigned the
13   Deed of Trust to "US Bank Trust, N.A., not in its individual capacity but solely as owner trustee for
14   VRMTG Asset Trust" (*"Lender"*) pursuant the that certain Assignment of Deed of Trust recorded
15   in the Official Records on February 24, 2020 as document number 2020-0009168.

16      46.    On or about February 24, 2020, Lender engaged Fay Servicing, LLC (*"Servicer"*) as
17   the mortgage servicer for the Loan. Thereafter, Lender replaced the Original Trustee and
18   substituted in First American Title Insurance Company (*"Trustee"*) as the new Loan Trustee
19   pursuant to that certain Substitution of Trustee recorded in the Official Records as document
20   number 2020-0056476.

21                        **BORROWER FINANCIAL DIFFICULTIES**
22                        **AND MORTGAGE DEFAULT**

23      47.    David and Elle Seymour, both in their 70's, have faced and overcome significant
24   challenges in their lives. Elle Seymour, a retired Los Angeles police officer, is a cancer survivor.
25   Although Elle survived her fight with cancer years ago, she was left with a compromised immune
26   system and diabetes after removal of a number or organs in her cancer battle. Elle then suffered a
27   stroke in February 2019 but, as a stronger fighter, was making a great recovery until she was the
28   victim of a head-on collision at the end of March 2019. Left with mild brain damage, Elle has been

1  in a fragile medical and emotional state ever since, yet she continues to stay strong and build on her
2  recovery. David Seymour runs his own general contracting business while also being the primary
3  care giver for his wife. Medical issues and caring for his wife took precedence for David over the
4  past few years and his business suffered as a result. When things were at their worst, the Country
5  got hit by a pandemic. By March 2020, the Coronvirus pandemic seriously affected David's
6  business and livelihood and the Seymour's were suffering financially, medically, and emotionally.
7  In early 2020, David reached out to his Servicer for mortgage assistance.

8          48.     On February 27, 2020, an unknown person at Fay Servicing sent Plaintiffs a canned,
9  form letter offering various loss mitigation options (*"Form Loss Mitigation Letter"*). The Form
10  Loss Mitigation Letter specifically states that, for the State of California, a full and complete loss
11  mitigation application "must be received at least seven (7) days before a scheduled foreclosure sale
12  in order for a borrower to be eligible for loss mitigation options." This purported deadline is false
13  and is contra to the requirement under HBOR to review all loss mitigation applications which are
14  received at least 5 business days prior to a scheduled foreclosure.

15         49.     Plaintiffs were unable to pay the March 2020 payment on the Loan and again
16  contacted Servicer for assistance. Servicer offered little more than the suggested to get all the past
17  due amounts paid in full to avoid foreclosure.

18                **FAILURE TO ASSIGN AND KEEP A SINGLE POINT OF CONTACT**

19         50.     On May 4, 2020, Servicer sent Plaintiffs a letter entitled "Notice of Default and
20  Intent to Accelerate" (the *"Default Letter"*). The Default Letter stated that Plaintiffs were in
21  default on the Loan and directed them to contact Tosha Crockrell at 1-800-495-7166 which
22  Servicer designated as Plaintiffs' "single point of contact" (the *"SPOC"*)

23         51.     On May 13, 2020, Trecia Smith at Fay Servicing (not the SPOC) sent Plaintiffs a
24  letter regarding Plaintiffs' request for loss mitigation assistance. There is no notice of removal of
25  Tosha Crockrell as the SPOC, however, from and after receipt of the Default Letter, Plaintiffs were
26  never able to make direct contact with their single point of contact, Tosha Crockrell. In fact,
27  Plaintiffs were forced to speak with a new person on nearly every contact with Servicer regarding
28

1 their loss mitigation options. The list of names of persons who handled Plaintiffs loss mitigation

2 process includes, but is not limited to:

3       a. Trecia Smith

4       b. Mary

5       c. Tamica

6       d. Elle

7       e. Tom "from Chicago"

8       f. Bryce Conklin

9       g. Carlos Castillo

10       h. Gary

11       i. James

12       j. Curtis Walker

13       k. Greg Hunter

14       l. Shanetta Bowen

15       m. Lou

16       n. Leo "in Chicago"

17       o. Jim Lawlor

18       p. Kenderick or Kederick

19                      **RESPA COVID-19 FORBEARANCE**

20             **PURSUANT TO 12 C.F.R. § 1024.41(c)(2)(v)(A).**

21     52.     On July 31, 2020, Servicer sent Plaintiffs a letter (the *"Forbearance Letter"*)

22 acknowledging an "incomplete loss mitigation application" and placing Plaintiffs into a Covid-19

23 forbearance plan (the *"Forbearance Plan"*).

24     53.     As stated in the Forbearance Letter, Plaintiffs "were approved for, and accepted, a

25 Forbearance Plan based on an evaluation of an incomplete loss mitigation application." Pursuant to

26 the Forbearance Letter, Servicer offered, and borrower accepted, the Forbearance Plan based upon

27 Servicer's evaluation of an incomplete application pursuant to 12 C.F.R. § 1024.41(c)(2)(v)(A).

28

1  54. Further, the Forbearance Letter states, "Although you do not need to take any 2 further action at this time, you are invited to complete your loss mitigation application to receive an 3 evaluation for all available loss mitigation options." The letter continues, "You will have the 4 opportunity to be evaluated for other options available at the conclusion of the forbearance period. 5 In addition, we will reach out to you at least 30 days prior to the end of the Forbearance Plan to 6 discuss your situation and provide additional information regarding options that may be available 7 to you."

8  55. Plaintiffs received no further information about the Forbearance Plan. Specifically, 9 Plaintiffs were not notified by Servicer regarding the terms or duration of the Forbearance Plan and 10 Plaintiffs have not received notice of any expiration of the Forbearance Plan. Plaintiffs believe and 11 understand that they are still in the Forbearance Plan at the time of this complaint.

12  56. On August 13, 2020, an unknown person at Fay Servicing sent Plaintiffs a second 13 *Form Loss Mitigation Letter* which contained the same threat that a full and complete loss 14 mitigation application "must be received at least seven (7) days before a scheduled foreclosure sale 15 in order for a borrower to be eligible for loss mitigation options." And that "[i]f a complete ... loss 16 litigation application is not received by the dates identified in this paragraph, you will not be 17 eligible for any loss mitigation option and the foreclosure sale may proceed." Again, this threat is 18 in direct violation of the requirements under HBOR.

19

**PLAINTIFFS SUBMIT A COMPLETE**

20

**LOSS MITIGATION APPLICATION ON SEPTEMBER 14, 2020**

21  57. On September 14, 2020, as offered by Servicer in the Forbearance Letter, Plaintiffs 22 submitted a full and complete loss mitigation application on the Servicer's required forms and 23 including the following information required by Servicer:

24   a. Signed and dated Fay Servicing Borrower Assistance Form.

25   b. Hardship explanation including the financial and medical difficulties 26    experienced by Plaintiffs which led to default and necessitated the need for loss 27    mitigation.

28

14
**CLASS ACTION COMPLAINT**

c. Profit & Loss financial statement for Mr. Seymour's contracting business which covered January 2020 to July 2020.

d. Profit & Loss financial statement for Mr. Seymour's contracting business for May 2020.

e. Profit & Loss financial statement for Mr. Seymour's contracting business for June 2020.

f. Profit & Loss financial statement for Mr. Seymour's contracting business for July 2020.

g. Copies of February, March and April rent income checks.

h. Montecito Bank & Trust – Checking Account Statement: account # 2332, David Seymour/Dave Seymour Construction (ending June 30, 2020).

i. Montecito Bank & Trust – Checking Account Statement: account # 2332, David Seymour/Dave Seymour Construction (ending July 31, 2020).

j. Montecito Bank & Trust – Savings Account Statement: account # 2079, David Seymour/Dave Seymour Construction (ending June 30, 2020).

k. Montecito Bank & Trust – Savings Account Statement: account # 2079, David Seymour/Dave Seymour Construction (ending July 31, 2020).

l. Montecito Bank & Trust – Checking Account Statement: account # 8024, David Seymour/Elle Seymour (ending June 26, 2020).

m. Montecito Bank & Trust – Checking Account Statement: account # 8024, David Seymour/Elle Seymour (ending July 28, 2020).

n. Montecito Bank & Trust – Star Checking Account Statement: account # 9191, Elle Seymour (ending July 3, 2020).

o. Montecito Bank & Trust – Star Checking Account Statement: account # 9191, Elle Seymour (ending Aug 3, 2020).

p. Union Bank – Checking Account Statement: account # 1173, David Seymour/Elle Seymour (ending July 28, 2020).

1            q. Union Bank – Checking Account Statement: account # 1173, David
2              Seymour/Elle Seymour (ending Aug 26, 2020).

3      58.    Plaintiffs' September 14, 2020 loss mitigation application constituted a "complete
4  application for a first lien loan modification" as that phrase is used in HBOR and a "complete loss
5  mitigation application" as used under RESPA, 12 C.F.R. § 1024.41(g).

6      59.    On September 16, 2020, Curtis Walker, on behalf of Servicer, sent Plaintiffs a letter
7  acknowledging receipt of the loss mitigation documents but claiming that the application it was
8  incomplete. The September 16, 2020 letter identified the following items as being missing and
9  required to "complete the Loss Mitigation Application":

10           a. "David Seymour: Please provide last year's full tax returns (business and
11             personal) or the most recent signed and dated quarterly or year-to-date profit and
12             loss statement AND the last 2 months' bank statements (business and personal)."

13           b. "Elle Seymour: Please return the two most recent bank statements showing
14             deposit amounts or award letter or other documentation showing the amount and
15             frequency of benefits. Please return the two most recent bank statements
16             showing receipt of income or other documentation showing the amount and
17             frequency of the income."

18     60.    On September 22, 2020, Servicer sent another letter to Plaintiffs' requesting the
19 identical information as the September 16, 2020 letter.

20     61.    In response to Servicer's requests for additional documents and information,
21 Plaintiffs' submitted the following information and documentation on or before October 15, 2020:

22           a. Mrs. Seymour's Checking Account Statement (account # 9191, Ending July 3,
23             2020) with the Social Security deposits and income specifically circled,
24             highlighted and marked with an asterisk "showing the amount and frequency of
25             the benefits" as specifically requested in Servicer's September 16 and 22 letters.

26           b. Mrs. Seymour's Checking Account Statement (account # 9191, Ending Aug 3,
27             2020) with the Social Security deposits and three additional incomes deposits
28             specifically circled, highlighted and marked with an asterisk "showing the

amount and frequency of the benefits" along with the "amount and frequency of income" as specifically requested in Servicer's September 16 and 22 letters.

c. Mr. Seymour's Checking Account Statement (account # 2332, David Seymour/Dave Seymour Construction (ending June 30, 2020).

d. Montecito Bank & Trust – Checking Account Statement: account # 2332, David Seymour/Dave Seymour Construction (ending July 31, 2020).

e. Montecito Bank & Trust – Checking Account Statement: account # 2332, David Seymour/Dave Seymour Construction (ending Aug 31, 2020).

f. Montecito Bank & Trust – Checking Account Statement: account # 2332, David Seymour/Dave Seymour Construction (ending Sept 30, 2020).

g. Montecito Bank & Trust – Savings Account Statement: account # 2079, David Seymour/Dave Seymour Construction (ending Aug 31, 2020).

h. Montecito Bank & Trust – Savings Account Statement: account # 2079, David Seymour/Dave Seymour Construction (ending Sept 30, 2020).

i. Montecito Bank & Trust – Checking Account Statement: account # 8024, David Seymour/Elle Seymour (ending Aug 28, 2020).

j. Montecito Bank & Trust – Checking Account Statement: account # 8024, David Seymour/Elle Seymour (ending Sept 28, 2020).

k. A signed and dated Profit & Loss Statement covering January 2020 to August 2020.

l. A written statement, as required, explaining that pages 2 and 4 from Mrs. Seymour's banks statements were devoid of any financial or material information whatsoever. Page 2 being canned bank disclosures regarding 'consumer rights,' 'questions about electronic transfers' and a blank sample check register with instructions on how to balance a bank account. Page 4 containing, in total, the following words: "Register for online banking by going to https://montecito.bank" The written statement directs Servicer to account number 2332 for an identical set of pages to show the contents explained above.

62. As of October 15, 2020, any alleged deficiencies in Plaintiffs' September 14, 2020 loss mitigation application were cured. The Servicer has absolutely everything requested from Plaintiffs and the loss mitigation application was complete. Servicer's legal obligations require a final answer on Plaintiffs' loss mitigation application on or before November 15, 2020 (*"Loss Mitigation Response Date"*).

63. As of October 15, 2020, A foreclosure sale had not been scheduled for the Property. Accordingly, Servicer received the Plaintiffs' loss mitigation application more than 90 days before any foreclosure sale date.

64. Unbeknownst to Plaintiffs, during the loss mitigation process above, Servicer, Lender and Trustee were preparing the following documents and filings related to the foreclosure of Plaintiffs' Property:

    a. On September 29, 2020, Damitira Anderson, Assistant Secretary at the Servicer, signed a substitution of trustee (the *"Substitution of Trustee"*) which substituted the foreclosure trustee so that Servicer could press forward with foreclosure.

    b. On October 9, 2020, Ryan Finnigan, VP, Fay Servicing, LLC, signed a formal declaration of compliance with Cal. Civ. Code § 2923.55 indicating that the mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure, and that thirty days had passed since the initial contact.

    c. On October 13, 2020, Servicer recorded the Substitution of Trustee in the Official Records as document number 2020-0056476.

    d. On October 16, 2020, DeeAnn Gregory, as "Authorized Signatory" as Servicer's foreclosure trustee signed the official *Notice of Default and Election to Sell Under Deed of Trust.*

65. Servicer's actions listed above occurred after Servicer had a facially complete loss mitigation application from Plaintiffs and said actions continued throughout the loss mitigation process indicating a knowing and willful dual tracking of Plaintiffs' matter.

**SERVICER AND TRUSTEE RECORD**

**AN ILLEGAL NOTICE OF DEFAULT**

66.     On October 20, 2020, while Plaintiffs' full and complete loss mitigation application was outstanding and under review (*and while Plaintiffs were in an approved RESPA Covid-19 Forbearance Plan*), Servicer illegally recorded a *Notice of Default and Election to Sell under Deed of Trust* (the *"NOD"*) in the Official Records as document number 2020-0058741.

67.     On October 20, 2020, Servicer charged Plaintiffs $1,020.00 for foreclosure attorney fees related to the illegal foreclosure filing.

68.     On October 28, 2020, Servicer finally acknowledged that Plaintiffs' loss mitigation application was complete.

69.     On November 10, 2020, Servicer charged Plaintiffs $238.71 in "foreclosure fees & costs" related to the illegal foreclosure filing.

70.     On November 16, 2020, past the expiration of the Loss Mitigation Response Date, Servicer sent Plaintiffs a letter (the *"Loss Mitigation Denial Letter"*) stating that Plaintiffs were "not eligible for an alternative to foreclosure. Our review indicated that, although you may have a hardship, you do not qualify for any available loss mitigation options."

71.     The Loss Mitigation Denial Letter contains no specific explanation regarding why Plaintiffs are not eligible for any alternative to foreclosure or why Plaintiffs' do not qualify for any available loss mitigation options.

72.     Despite being in an approved RESPA Covid-19 Forbearance Plan, the Loss Mitigation Denial Letter orders Plaintiffs to pay $42,492.03 "as quickly as possible" to avoid the "negative impacts to your credit rating resulting from late payments and to avoid foreclosure."

73.     Plaintiffs now face an active foreclosure process against their home which has caused enormous pressure and strain on these two elderly homeowners. Mrs. Seymour's medical difficulties have been exacerbated by the stress caused by Servicer's actions and violations of law. Plaintiffs are both unable to sleep properly and they spend significant amounts of time working on the loss mitigation process which is being mishandled by the Servicer. Defendants' mishandling of

1 Plaintiffs' loss mitigation application and the constant threats of an illegal foreclosure caused
2 Plaintiffs extreme mental, emotional and physical distress and anguish.

3    74.    By engaging in the conduct herein alleged, Defendants knowingly violated various
4 state and federals laws including, without limitation, REPSA, HBOR, and the FDCPA.

5    75.    The Notice of Default was recorded in violation of state and federal law and is
6 rendered void. The Notice of Default is invalid, unlawful and must be cancelled and fully rescinded
7 from Plaintiffs' Property.

8                          **CLASS ACTION ALLEGATIONS**

9    76.    Plaintiffs bring this action on behalf of themselves and the members of the
10 following classes (the *"Classes"* or the *"class members"*):

11          a.  "Nationwide Class": All homeowners in the United States that submitted a loss
12              mitigation application to Servicer within the last three years.

13          b.  "California Servicer Subclass": All homeowners in the State of California that
14              submitted a loss mitigation application to Servicer within the last four years.

15          c.  "California Trustee Subclass": All homeowners in the State of California that
16              were subject to a foreclosure filing by Trustee while a complete loss mitigation
17              application was pending.

18    77.    Subject to additional information obtained through further investigation and
19 discovery, the foregoing Classes may be expanded or narrowed by amendment or amended
20 complaint. Specifically excluded from the Classes is any entity in which Defendant had a
21 controlling interest or which has a controlling interest in Defendant, and Defendant's legal
22 representatives, assigns, and successors.

23    78.    Members of the Classes are so numerous that joinder is impracticable. While the
24 exact number of class members is unknown to Plaintiffs, it is believed that the Classes are
25 comprised of at least thousands of members geographically dispersed throughout the United States
26 and the State of California. The Classes, however, are readily identifiable from information and
27 records in the possession of Servicer.

28

79.    Common questions of law and fact exist as to all members of the Classes. These questions predominate over questions that may affect only individual class members because Defendants have acted on grounds generally applicable to the Classes. Such common legal or factual questions include:

a.  Whether Servicer violated 12 C.F.R. § 1024.40;

b.  Whether Servicer engaged in a pattern or practice of violating 12 C.F.R. § 1024.40;

c.  Whether Plaintiffs and members of the Classes were damaged as a result of Servicer's violations of 12 C.F.R. § 1024.40;

d.  Whether Plaintiffs and members of the Classes are entitled to penalties and/or statutory damages as a result of Servicer's violations of 12 C.F.R. § 1024.40;

e.  Whether Servicer violated 12 C.F.R. § 1024.41;

f.  Whether Servicer engaged in a pattern or practice of violating 12 C.F.R. § 1024.41;

g.  Whether Plaintiffs and members of the Classes were damaged as a result of Servicer's violations of 12 C.F.R. § 1024.41;

h.  Whether Plaintiffs and members of the Classes are entitled to penalties and/or statutory damages as a result of Servicer's violations of 12 C.F.R. § 1024.41;

i.  Whether Defendants violated 15 U.S.C. § 1692e

j.  Whether Defendants engaged in a pattern or practice of violating 15 U.S.C. § 1692e;

k.  Whether Plaintiffs and members of the Classes were damaged as a result of Defendants' violations of 15 U.S.C. § 1692e;

l.  Whether Plaintiffs and members of the Classes are entitled to penalties and/or statutory damages as a result of Defendants' violations of 15 U.S.C. § 1692e;

m. Whether Defendants violated 15 U.S.C. § 1692f

n.  Whether Defendants engaged in a pattern or practice of violating 15 U.S.C. § 1692f;

| | | o. | Whether Plaintiffs and members of the Classes were damaged as a result of |
| | | | Defendants' violations of 15 U.S.C. § 1692f; |
| | | p. | Whether Plaintiffs and members of the Classes are entitled to penalties and/or |
| | | | statutory damages as a result of Defendants' violations of 15 U.S.C. § 1692f; |
| | | q. | Whether Defendants violated California's Homeowner Bill of Rights; |
| | | r. | Whether Plaintiffs and members of the Classes were damaged as a result of |
| | | | Defendants' violations of California's Homeowner Bill of Rights; |
| | | s. | Whether Plaintiffs and members of the Classes are entitled to injunctive and/or |
| | | | declaratory relief; and |
| | | t. | Whether Servicer is required to modify Plaintiffs' and the Class members' |
| | | | mortgages. |

80.     Defendants' defenses to Plaintiffs' claims are typical of its defenses to claims of the members of the Classes.

81.     Plaintiffs' claims are typical of the members of the Classes as all members of the Classes are similarly affected by Defendants' actionable conduct. Plaintiffs and all members of the Classes requested loss mitigation assistance and/or submitted loss mitigation applications to Servicer. In addition, Defendants' conduct that gave rise to the claims of Plaintiffs and members of the Classes (i.e., violating Regulation X, HBOR and the FDCPA) is the same for all members of the Classes.

82.     Plaintiffs will fairly and adequately protect the interests of the Classes because Plaintiffs have no interests antagonistic to, or in conflict with, the Classes that Plaintiffs seek to represent. Furthermore, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation. Plaintiffs have or can acquire adequate financial resources to assure that the interests of the Classes will not be harmed.

83.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility

1  of inconsistent or contradictory judgments that numerous individual actions would engender. The
2  benefits of the class mechanism, including providing injured persons or entities with a method for
3  obtaining redress on claims that might not be practicable to pursue individually, substantially
4  outweigh any difficulties that may arise in the management of this class action.

5      84.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action
6  that would preclude its maintenance as a class action.

7      85.    Defendants have acted or refused to act on grounds generally applicable to the
8  Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with
9  respect to the Classes as a whole.

10     86.    This forum is an appropriate forum for litigation of the claims of the Classes.

11                         **FIRST CAUSE OF ACTION**

12                 **VIOLATIONS OF REGULATION X OF RESPA**

13     *(By Plaintiffs, on Behalf of the proposed Nationwide Class and California Servicer Class,*

14               *Against Defendant Servicer (Including DOES 1-50))*

15     87.    Plaintiffs reallege and incorporate by reference all previous paragraphs and
16  allegations above as though fully set forth herein.

17     88.    Servicer is a master servicer (a mortgage loan servicer) within the meaning of 12
18  C.F.R. § 1024.31.

19     89.    Plaintiffs and class members are borrowers of federally-related mortgage loans
20  within the meaning of 12 C.F.R. § 1024.31.

21     90.    Plaintiffs and class members requested loss mitigation assistance from Servicer and
22  submitted loss mitigation applications within the meaning of 12 C.F.R. § 1024.31.

23     91.    By virtue of the acts described above, Servicer engaged in a pattern and practice of
24  violating and failing to comply with the requirements of Regulation X of RESPA with respect to
25  Plaintiffs and the class members.

26     92.    Plaintiffs submitted a "complete loss mitigation application" on September 14,
27  2020, as that phrase is used in Regulation X of RESPA. At the time Plaintiffs submitted this
28

                              23

1 application there was no scheduled foreclosure date and, therefore, there was more than 90 days
2 before a foreclosure sale.

3      Plaintiffs' complete loss mitigation application was submitted and remained outstanding
4 prior to the "first notice or filing required by applicable law for any judicial or non-judicial
5 foreclosure process" as that phrase is used in 12 C.F.R. 1024.41(f)(1) ("Prohibition on foreclosure
6 referral").

7 **Violations of 12 C.F.R. § 1024.40**

8 **(Continuity of Contact)**

9     93.    Pursuant to 12 C.F.R. § 1024.40, Servicer was required to designate a point of
10 contact (a **"POC"**) to Plaintiffs' and the class members' file within 45 days of the first missed
11 payment and to make such POC available to Plaintiffs and the class members via telephone. The
12 POC was required to provide Plaintiffs and the class members with accurate information about the
13 loss mitigation options available and the actions required to be evaluated for such loss mitigation.
14 The POC was required to provide Plaintiffs and the class members with accurate information about
15 the status of any loss mitigation application that was submitted to the Servicer.

16     94.    Servicer violated 12 C.F.R. § 1024.40 by failing to assign a POC to Plaintiffs within
17 45 days of Plaintiffs' default. Plaintiffs are informed and believe that the class members
18 experienced the same violations.

19     95.    Servicer violated 12 C.F.R. § 1024.40 by failing to provide Plaintiffs a means of
20 contacting a POC and by failing to require a POC to make timely contact with Plaintiffs regarding
21 the status of their Loss Mitigation Application. As alleged herein, Plaintiffs attempted to make
22 contact with a POC on numerous occasions and were never able to make direct contact and never
23 received a timely and accurate response from a POC. Rather, Servicer had random employees
24 make contact with Plaintiffs and/or had unidentified persons mail notices to Plaintiffs regarding the
25 Loss Mitigation Application. Plaintiffs are informed and believe that the class members
26 experienced the same violations.

27     96.    Servicer violated 12 C.F.R. § 1024.40 by having random employees contact
28 Plaintiffs where such employees were unfamiliar with Plaintiffs' Loss Mitigation Application.

1 Plaintiffs were forced to speak with many customer service representatives, none of whom were
2 familiar with the file. As alleged herein, Plaintiffs received false, misleading, inaccurate and
3 inconsistent information about the status of the Loss Mitigation Application and what items and
4 documents were required to complete a review of the same. Plaintiffs are informed and believe that
5 the class members experienced the same violations.

6     97.     Further, each representative Plaintiffs spoke with failed to act as a POC for
7 Plaintiffs, either individually or as a team of personnel, because each such representatives gave
8 false, misleading, inaccurate, and inconsistent information regarding Plaintiffs' Loss Mitigation
9 Application. Servicer violated 12 C.F.R. § 1024.40 by failing to provide Plaintiffs with a POC
10 because Servicer's agents and employees, either individually or as an alleged team, failed to
11 comply with any requirement imposed by 12 C.F.R. § 1024.40. Plaintiffs are informed and believe
12 that the class members experienced the same violations.

13                          **Violation of § 1024.41(c)(1)**

14                 **(Evaluation of Loss Mitigation Applications)**

15     98.     Pursuant to 12 C.F.R. § 1024.41(c), if a servicer receives a complete loss mitigation
16 application more than 37 days before a foreclosure sale, then, within 30 days of receiving a
17 borrower's complete loss mitigation application, a servicer shall (i) evaluate the borrower for all
18 loss mitigation options available to the borrower and (ii) provide the borrower with a notice in
19 writing stating the servicer's determination of which loss mitigation options, if any, it will offer to
20 the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this
21 notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program
22 as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that
23 the borrower has the right to appeal the denial of any loan modification option as well as the
24 amount of time the borrower has to file such an appeal and any requirements for making an appeal,
25 as provided for in paragraph (h) of this section.

26     99.     On September 14, 2020, Plaintiffs submitted a complete loss mitigation application
27 to Servicer. By October 15, 2020, all corrections and additional items were submitted to Servicer
28 to make the application full and complete as required by Regulation X. Servicer was required to

1 || provide a final written determination on Plaintiffs' loss mitigation application by November 15,
2 || 2020.

3 ||     100.    Servicer violated 12 C.F.R. § 1024.41(c)(1) by failing to (i) evaluate Plaintiffs for
4 || all available loss mitigation options or (ii) provide Plaintiffs with a notice in writing stating
5 || Servicer's determination of which loss mitigation options, if any, it will offer to Plaintiffs borrower
6 || on behalf of the owner or assignee of the mortgage loan within 30 days of receiving Plaintiffs' loss
7 || mitigation application. Plaintiffs are informed and believe that the class members experienced the
8 || same violations.

9 || **Violation of § 1024.41(c)(2)(iv)**

10 || **(Facially Complete Application)**

11 ||     101.    Pursuant to 12 C.F.R. § 1024.41(c)(2)(iv), "A loss mitigation application shall be
12 || considered facially complete

13 ||         a.  when a borrower submits all the missing documents and information as stated in
14 ||            the notice required under paragraph (b)(2)(i)(B) of this section,

15 ||         b.  when no additional information is requested in such notice, or

16 ||         c.  once the servicer is required to provide the borrower a written notice pursuant to
17 ||            paragraph (c)(3)(i) (notice of complete application) of this section.

18 ||     102.    Further, "[i]f the servicer later discovers that additional information of corrections to
19 || a previously submitted document are required to complete the application, the servicer must
20 || promptly request the missing information or corrected documents and *treat the application as*
21 || *complete for the purposes of paragraph (f)(2) and (g)* of this section until the borrower is given a
22 || reasonable opportunity to complete the application." 12 C.F.R. § 1024.41(c)(2)(iv) (emphasis
23 || added).

24 ||     103.    Finally, "[i]f a borrower submits all the missing documents and information as
25 || stated in the notice required pursuant to § 1026.41(b)(2)(i)(B), or no additional information is
26 || requested in such notice, *the application shall be considered facially complete.* … If the borrower
27 || completes the application within this period, *the application shall be considered complete as of the*

28 ||

26
**CLASS ACTION COMPLAINT**

1  *date it was facially complete*, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this
2  section..." 12 C.F.R. § 1024.41(c)(2)(iv) (emphasis added).

3        104.   On September 14, 2020, Plaintiffs submitted a loss mitigation application to
4  Servicer which was either complete or facially complete. By October 15, 2020, Servicer had
5  received all items and documents requested rendering Plaintiffs' loss mitigation application fully
6  and actually complete.

7        105.   Servicer violation to 12 C.F.R. § 1024.41(c)(2)(iv) by failing to consider and treat
8  Plaintiffs' loss mitigation application as "complete" as required by Regulation X by October 15,
9  2020. Plaintiffs are informed and believe that the class members experienced the same violations.

10                          **Violations of § 1024.41(c)(2)(v)**

11                        **(RESPA Covid-19 Forbearance Plan)**

12       106.   On July 31, 2020, Servicer sent Plaintiffs a letter (the *"Forbearance Letter"*)
13  acknowledging an "incomplete loss mitigation application" and approving Plaintiffs for a Covid-19
14  forbearance plan (the *"Forbearance Plan"*). As stated in the Forbearance Letter, Plaintiffs "were
15  approved for, and accepted, a Forbearance Plan based on an evaluation of an incomplete loss
16  mitigation application." Further, the Forbearance Letter states, "we will reach out to you at least 30
17  days prior to the end of the Forbearance Plan to discuss your situation and provide additional
18  information regarding options that may be available to you."

19       107.   Pursuant to the Forbearance Letter, Servicer offered, and Plaintiffs accepted, the
20  Forbearance Plan based upon Servicer's evaluation of an incomplete application pursuant to 12
21  C.F.R. § 1024.41(c)(2)(v)(A).

22       108.   Pursuant to § 1024.41(c)(2), Servicer was required to provide the specific terms and
23  duration of the forbearance program.

24       109.   Pursuant to § 1024.41(c)(2)(v)(A), Servicer was required to provide the following
25  protections and benefits as part of Plaintiffs' Forbearance Plan:

26              a.  Paragraph (c)(2)(v)(A)(1): Servicer must delay payment of "covered amounts"
27                  until the mortgage loan is refinanced, the mortgaged property is sold, or the term
28                  of the mortgage loan ends.

                                    27
                            **CLASS ACTION COMPLAINT**

1          b. Paragraph (c)(2)(v)(A)(2): Servicer cannot charge or accrue interest for any
2             "covered amounts."

3          c. Paragraph (c)(2)(v)(A)(3): Servicer must end any preexisting delinquency on the
4             mortgage loan upon Plaintiffs' acceptance of the Forbearance Plan.

5          110.    For purposes of paragraph (c)(2)(v)(A), "covered amounts" includes, without
6   limitation, all *principal and interest payments forborne under a payment forbearance program*
7   made available to borrowers experiencing a financial hardship due, directly or indirectly, to the
8   COVID-19 emergency; it also includes, without limitation, *all other principal and interest*
9   *payments that are due and unpaid by a borrower* experiencing financial hardship due, directly or
10  indirectly, to the COVID-19 emergency. 12 U.S.C. § 1024.41(c)(2)(v)(A)(1) *(emphasis added)*.
11  For purposes of paragraph (c)(2)(v)(A)(1), "the term of the mortgage loan" means the term of the
12  mortgage loan according to the obligation between the parties in effect when the borrower is
13  offered the loss mitigation option. *Id.*

14         111.    Servicer failed to provide the specific terms and duration of the Forbearance Plan.

15         112.    Servicer failed to contact Plaintiffs 30 days prior to any expiration of the
16  Forbearance Plan. Plaintiffs are informed and believe that they are still in the Forbearance Plan.

17         113.    Servicer was prohibited from filing the Notice of Default against Plaintiffs Property
18  while Plaintiffs were protected by the Forbearance Plan.

19         114.    Servicer Filed the Notice of Default and commenced foreclosure while Plaintiffs
20  were protected by the Forbearance Plan.

21         115.    Servicer violated § 1024.41(c)(2)(v)(A) when it failed to end all pre-existing
22  delinquency on the Loan at the time Plaintiffs acceptance the Forbearance Plan and when it
23  recorded the Notice of Default and commenced foreclosure based upon payments alleged to be due
24  and unpaid which accrued during the Forbearance Plan and which are "covered amounts" under
25  paragraph (c)(2)(v)(A)(1). Plaintiffs are informed and believe that the class members experienced
26  the same violations.

27         116.    Servicer violated § 1024.41(c)(2)(v)(A) when it charged foreclosure filing fees and
28  attorney fees for the foreclosure action and attempted to collect those charges pursuant to the

1 | mortgage statement dated November 10, 2020, which included amounts for those improper fees.
2 | Plaintiffs are informed and believe that the class members experienced the same violations.

3 | 117. Servicer violated § 1024.41(c)(2)(v)(A) by charging interest on "covered amounts"
4 | during the forbearance period and attempted to collect those charges pursuant to the mortgage
5 | statement dated November 10, 2020, which were covered amounts included in the Forbearance
6 | Plan. Plaintiffs are informed and believe that the class members experienced the same violations.

7 | 118. Servicer violated § 1024.41(c)(2)(v)(A) when it charged late fees on "covered
8 | amounts" during the forbearance period and attempted to collect those fees pursuant to the
9 | mortgage statement dated November 10, 2020. Plaintiffs are informed and believe that the class
10 | members experienced the same violations.

11 | 119. Servicer violated § 1024.41(c)(2)(v)(A)(2) by charging and attempting to collect
12 | existing late charges, penalties, foreclosure costs, attorneys' fees and other similar charges that
13 | were required to be waived promptly upon Plaintiffs' acceptance of the Forbearance Plan.
14 | Plaintiffs are informed and believe that the class members experienced the same violations.

15 | 120. Servicer violated § 1024.41(c)(2)(v)(A)(3) by failing to end all pre-existing
16 | delinquency on the mortgage loan at the time Plaintiffs acceptance the Forbearance Plan pursuant
17 | to paragraph (c)(2)(v)(A) of this section and recording a Notice of Default based upon the alleged
18 | delinquency, charging foreclosure costs and attorneys' fees for said improper action, and, further,
19 | by making a demand for payment of such amounts in the mortgage statement dated November 10,
20 | 2020. Plaintiffs are informed and believe that the class members experienced the same violations.

21 | ## Violation of 12 C.F.R. 1024.41(c)(3)

22 | ### (Notification of Complete Application)

23 | 121. Servicer violated 12 C.F.R. § 1024.41(c)(3)(i), by failing to notify Plaintiffs within 5
24 | days of October 15, 2020 that: (a) that Plaintiffs' loss mitigation application was complete; (b) the
25 | date the servicer received the complete application; (c) that the servicer expects to complete its
26 | evaluation within 30 days of the date it received the complete application; (d) that the borrower is
27 | entitled to certain foreclosure protections because the servicer has received the complete
28 | application, and, the servicer has not made the first notice or filing required by applicable law for

29

1   any judicial or non-judicial foreclosure process, that the servicer cannot make the first notice or
2   filing required to commence or initiate the foreclosure process under applicable law before
3   evaluating the borrower's complete application; (e) that the servicer may need additional
4   information at a later date to evaluate the application, in which case the servicer will request that
5   information from the borrower and give the borrower a reasonable opportunity to submit it, the
6   evaluation process may take longer, and the foreclosure protections could end if the servicer does
7   not receive the information as requested; and (f) that the borrower may be entitled to additional
8   protections under State or Federal law. Plaintiffs are informed and believe that the class members
9   experienced the same violations.

## Violation of § 1024.41(d)

### (Denial of Loan Modification Options)

12     122.   Servicer violated 12 C.F.R. § 1024.41(d) by failing to include in the denial of
13   Plaintiffs' loss mitigation application "the specific reason or reasons for the servicer's
14   determination for each such trial or permanent loan modification option." Plaintiffs are informed
15   and believe that the class members experienced the same violations.

16     123.   To the extent that Servicer's late-delivered Loss Mitigation Denial Letter was meant
17   to comply with §§ 1024.41(d), it falls woefully short. First, it was not sent within 30 days of
18   Servicer's receipt of Plaintiffs' complete Loss Mitigation Application. Second, it does not state all
19   the trial or permanent loan modification options available to the Plaintiffs and the specific reasons
20   for denial of those options. Third, Servicer's reason of "insufficient income" does not constitute a
21   "specific reason [...] for the servicer's determination" within the meaning of 12 C.F.R. §
22   1024.41(d)(1). Fourth, it falsely states that the "COVID Forbearance Plan" is not available due to
23   the delinquent balance on the mortgage. However, Plaintiffs were actively in the Covid-19
24   forbearance plan with Servicer as indicated by the Servicer's letter dated July 31, 2020. Plaintiffs
25   are informed and believe that the class members experienced the same violations.

26     124.   Servicer does not explain the terms of the program for which the Plaintiffs were
27   evaluated and denied, does not state what income was used to evaluate Plaintiffs and does not
28   specify what amount is needed to "achieve a payment that would qualify for the program." And, to

1 │ the extent the program(s) was/were based on a requirement of the owner or assignee of the
2 │ borrower's mortgage loan, then the denial notice failed to state the requirement that is the basis of
3 │ the denial. 12 C.F.R. § 1024, Supp. I, § 41(d) cmt. 1. Plaintiffs are informed and believe that the
4 │ class members experienced the same violations.

5 │     125.    To the extent that Servicer's Loss Mitigation Denial Letter include denials that may
6 │ be based upon a net present value calculation (which appears to be the case here), Servicer violated
7 │ 12 C.F.R. §1024(d) by failing to include all the inputs used in the net present value calculation. 12
8 │ C.F.R. § 1024, Supp. I, § 41(d) cmt. 2. Plaintiffs are informed and believe that the class members
9 │ experienced the same violations.

10 │ 

**Violation of § 1024.41(h)**

11 │ **(Appeal Process)**

12 │     126.    By failing to provide the required specificity and the details of the various denials in
13 │ the Loss Mitigation Denial Letter, Servicer also violated 12 C.F.R. § 1024.41(h) by not allowing
14 │ Plaintiffs an opportunity to present an appeal Servicer's denial of available loss mitigation
15 │ programs. Plaintiffs are informed and believe that the class members experienced the same
16 │ violations.

17 │ 

**Violation of § 1024.41(f)(2)**

18 │ **(Prohibition on Foreclosure Referral)**

19 │     127.    Pursuant to 12 C.F.R. § 1024.41(f)(2), "If a borrower submits a complete loss
20 │ mitigation application during the pre-foreclosure review period […] or before a servicer has made
21 │ the first notice of filing required by applicable law for any judicial or non-judicial foreclosure
22 │ process, a servicer shall not make the first notice or filing required by applicable law for any
23 │ judicial or non-judicial foreclosure process unless: (i) The servicer has sent the borrower a notice
24 │ pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss
25 │ mitigation option and the appeal process in paragraph (h) of this section is not applicable, the
26 │ borrower has not requested an appeal within the applicable time period for requesting an appeal, or
27 │ the borrower's appeal has been denied"

28 │

31

**CLASS ACTION COMPLAINT**

1    128.    Plaintiffs' Loss Mitigation Application was either complete or facially complete as

2  of October 15, 2020 for purposes of applying protections under 12 C.F.R. § 1024.41(f).

3    129.    Plaintiffs' Loss Mitigation Application was submitted and remained outstanding

4  prior to the "first notice of filing required by applicable law for any judicial or non-judicial

5  foreclosure process" as that phrase is used in 12 C.F.R. 1024.41(f)(1).

6    130.    Servicer violated to 12 C.F.R. § 1024.41(f)(2), by recording the Notice of Default

7  on October 20, 2020. Plaintiffs are informed and believe that the class members experienced the

8  same violations.

9                          **Harm to Plaintiffs and The Class Members**

10    131.    Servicer's violations of Regulation X were prejudicial and harmful to Plaintiffs and

11  the class members because those violations:

12              a.    deprived Plaintiffs and the class members of the rights and protections under

13                    RESPA.

14              b.    deprived Plaintiffs and the class members of a reasonable opportunity to be

15                    reviewed and evaluated for all available loss mitigation options.

16              c.    deprived Plaintiffs and the class members of a reasonable opportunity to be

17                    reviewed and evaluated for loan modifications that would cure their

18                    mortgage default.

19              d.    deprived Plaintiffs and the class members of any opportunity to prevent the

20                    initiation of the foreclosure proceedings against their home.

21              e.    prevented Plaintiffs and the class members from reasonably assessing their

22                    situation and avoiding foreclosure at pivotal times when such information

23                    would have made a difference.

24              f.    Substantially, unnecessarily and unreasonably delayed the loss mitigation

25                    process which exposed Plaintiffs and the class members to additional costs

26                    and fees and facilitated the commencement of foreclosure proceedings which

27                    further escalated the costs and fees charged by the Servicer and its Trustee.

28

1    132.    As a result of Servicer's violations of Regulation X, Plaintiffs have suffered actual
2  damages as follows:

3              a.    Plaintiffs and the class members were unable to secure a mortgage
4                    modification, unable to resume making mortgage payments, remained in
5                    delinquent status and have been assessed ongoing, unnecessary, and, in some
6                    cases, illegal late fees, foreclosure costs, foreclosure attorney fees and other
7                    costs and fees charged by Servicer and Trustee.

8              b.    Plaintiffs' and the class members' homes were illegally placed into active
9                    foreclosure when Servicer and its Trustee recorded the Notice of Default.
10                   Plaintiffs now face an imminent and unlawful foreclosure auction.

11             c.    Plaintiffs and the class members expended considerable time, energy, effort
12                   and money pursuing the loss mitigation process and complying with
13                   Servicer's demands to produce documents which Servicer either lost or
14                   ignored.

15             d.    Plaintiffs and the class members expended time and money preparing their
16                   financial information for their Loss Mitigation Application, as well as
17                   considerable time and effort preparing, providing, and vouching for the truth
18                   of their financial information and making repeated copies of documents,
19                   coordinating with their banks for documents, which would have been
20                   minimized or avoided had Servicer complied with Regulation X.    This
21                   additional and unnecessary time and effort spent on the loss mitigation
22                   process of many, many months was at the expense of devoted time and effort
23                   to their struggling business and their ongoing financial and medical issues.

24             e.    Plaintiffs and the class members were forced to incur administrative costs
25                   such as postage, travel expenses, photocopying, scanning, and facsimile
26                   expenses pursuing the loss mitigation process, which they would not have
27                   incurred if Servicer had complied with Regulation X.    Servicer's violations
28                   of Regulation X have unreasonably and improperly increased the time,

1    energy, effort and money required by Plaintiffs in pursuing the loss
2    mitigation process.

3    f.    Plaintiffs have been charged thousands of dollars in foreclosure related costs
4    and fees by Servicer as a direct result of Servicer's violations of Regulation
5    X.

6    g.    Plaintiffs have also suffered emotional damages in the form of fear and
7    anxiety resulting from the continual threat of foreclosure and eviction
8    resulting from Servicer's violations of Regulation X.

9    h.    Plaintiffs are informed and believe and thereupon allege that Servicer
10    provided adverse information to consumer reporting agencies and, thereby,
11    Plaintiffs have suffered improper credit damage as a direct result of
12    Servicer's violations of Regulation X.

13    i.    Plaintiffs have expended money in seeking legal redress as well in order to
14    protect their real property rights pursuant to RESPA.

15    133.    Plaintiffs and the class members allege that Servicer's conduct in this case
16    constitutes a willful violation of the applicable provisions of Regulation X of RESPA. As a result
17    of Servicer's actions in violation of RESPA, Servicer is liable to Plaintiffs and the class members
18    for actual damages, statutory damages, costs, and attorney's fees.

19    134.    Whether Plaintiffs or the class members have actually paid any such costs or fees
20    which were assessed by Servicer is irrelevant to the damages analysis. Numerous courts have held
21    that assessed fees can constitute damages under RESPA, even if Plaintiffs or the class members
22    have not paid them. *See, e.g., Claude v. Wells Fargo Home Mortg.*, No. 3:13-CV-00535, 2014 WL
23    4073215, at *5 (D. Conn. Aug. 14, 2014) ("the servicer wrongfully imposed late fees"); *Allen v.*
24    *Bank of Amer. Corp.*, No. CCB-11-33, 2011 WL 3654451, at *5 (D. Md. Aug. 18, 2011) (plaintiffs
25    stated claim under RESPA for improper "imposition" of late fees).

26
27
28

1 | **SECOND CAUSE OF ACTION**

2 | **VIOLATIONS OF CALIFORNIA'S HOMEOWNER BILL OF RIGHTS**

3 | **(SERVICER)**

4 | *(By Plaintiffs, on behalf of the proposed California Servicer Class, Against Defendant Servicer*

5 | *(Including DOES 1-50))*

6 | 135. Plaintiffs reallege and incorporate by reference all previous paragraphs and

7 | allegations above as though fully set forth herein.

8 | 136. On September 14, 2020, at a time when no foreclosure auction had been scheduled,

9 | Plaintiffs requested a loan modification under California's Homeowner Bill of Rights (*"HBOR"*)

10 | by delivering a full and complete loan modification application to Servicer which contained all of

11 | the information required by Servicer in order to make a final decision on Plaintiff's loan

12 | modification application. Any and all additional information required or requested by Servicer was

13 | delivered on or before October 15, 2020. Plaintiffs are informed and believe that the class members

14 | submitted the same request to Servicer.

15 | **Violation of § 2923.6**

16 | 137. Servicer violated Cal. Civ. Code § 2923.6 by recording the NOD while Plaintiffs

17 | first lien loan modification application was pending. Plaintiffs are informed and believe that the

18 | class members experienced the same violations.

19 | 138. Based upon these material violations of Cal. Civ. Code § 2923.6, Plaintiffs and class

20 | members are entitled to an injunction under Cal. Civ. Code § 2924.12 stopping any further

21 | foreclosure action against their properties and an award for attorney's fees and costs. Plaintiffs and

22 | the class members further allege that Defendants' violation of these provisions of the HBOR was

23 | knowing, malicious, willful and reckless.

24 | **Violation of § 2923.7**

25 | 139. HBOR specifically requires that upon a request for a "foreclosure prevention

26 | alternative, the mortgage servicer shall promptly establish a single point of contact and provide to

27 | the borrower one or more direct means of communicating with the single point of contact" and that

28 | "[t]he single point of contact shall remain assigned to the borrower's account until the mortgage

1 servicer determines that all loss mitigation options offered by, or through, the mortgage servicer
2 have been exhausted or the borrower's account becomes current." Cal. Civ. Code § 2923.7.

3     140.    Plaintiffs requested a foreclosure prevention alternative and assignment of a single
4 point of by January 2020. Plaintiffs are informed and believe that the class members submitted
5 similar requests to Servicer.

6     141.    Servicer failed to promptly establish a single point of contact for Plaintiffs and the
7 class members. Rather, immediately upon Plaintiffs request for mortgage assistance, Servicer
8 began shunting Plaintiffs among various employees who gave inconsistent, conflicting and
9 erroneous information. Plaintiffs interactions with non-SPOC employees include no less than 16
10 people at the Servicer, including the following individuals: Trecia Smith; Mary; Tamica; Elle; Tom
11 "from Chicago"; Bryce Conklin; Carlos Castillo; Gary (regarding pandemic protection plan);
12 James; Curtis Walker; Greg Hunter; Shanetta Bowen; Lou; Leo "in Chicago"; Jim Lawlor and
13 Kenderick or Kederick. Plaintiffs are informed and believe that the class members experienced the
14 same violations.

15    142.    Servicer delivered numerous letters and written demands from unidentified
16 employees and directed Plaintiffs to call the general customer servicer number. Plaintiffs never had
17 a method to directly contact the SPOC. Plaintiffs are informed and believe that the class members
18 experienced the same violations.

19    143.    Servicer violated Cal. Civ. Code § 2923.7(a), by failing to provide Plaintiffs and the
20 class members one or more direct means of communicating with the single point of contact.
21 Plaintiffs are informed and believe that the class members experienced the same violations.

22    144.    Servicer violated Cal. Civ. Code § 2923.7(c), by failing keep a single point of
23 contact assigned to the borrower's account until the mortgage servicer determines that all loss
24 mitigation options offered by, or through, the mortgage servicer have been exhausted or the
25 borrower's account becomes current. Plaintiffs are informed and believe that the class members
26 experienced the same violations.

27    145.    Servicer violated Cal. Civ. Code § 2923.7(b), by assigning individuals to Plaintiffs'
28 and the class members' loss mitigation request who:

1    a. Failed to communicate the process by which Plaintiffs may apply for an
2        available foreclosure prevention alternative and the deadline for any required
3        submissions to be considered for these options.

4    b. Failed to coordinate receipt of all documents associated with available
5        foreclosure prevention alternatives and notify Plaintiffs of any missing
6        documents necessary to complete the application.

7    c. Failed to have access to current information and personnel sufficient to timely,
8        accurately, and adequately inform Plaintiffs of the current status of the
9        foreclosure prevention alternative.

10   d. Failed to ensure that Plaintiffs were considered for all foreclosure prevention
11       alternatives offered by, or through, the mortgage servicer, if any.

12   e. Failed to have access to individuals with the ability and authority to stop
13       foreclosure proceedings when necessary.

14  Plaintiffs are informed and believe that the class members experienced the same violations.

15       146.    As a result of Servicer's violations of § 2923.7 alleged above, Plaintiffs and the
16  class members were illegally dual tracked which resulted in the illegal commencement of
17  foreclosure actions and the recording of illegal notices of default or notices of trustee's sale.

18       147.    Further, Servicer's violations of § 2923.7 resulted in significant costs and fees
19  charged to Plaintiffs' and the class members' mortgages, including, without limitation, late fees,
20  foreclosure filing fees, inspection fees, and foreclosure attorney and trustee fees.

21       148.    Further, Servicer's violations of § 2923.7 resulted in Plaintiffs and the class
22  members incurring additional out-of-pocket costs for responding to the erroneous demands from
23  Servicer's employees, including, without limitation, printing, scanning, faxing, mailing and travel
24  costs associated with redundant and unnecessary document production.

25       149.    Based upon these material violations of Cal. Civ. Code § 2923.7, Plaintiffs and class
26  members are entitled to an injunction under Cal. Civ. Code § 2924.12 stopping any further
27  foreclosure action against their properties and an award for attorney's fees and costs. Plaintiffs and

28

37
**CLASS ACTION COMPLAINT**

1 | the class members further allege that Defendants' violation of these provisions of the HBOR was
2 | knowing, malicious, willful and reckless.

3 | ## Violation of § 2924.10

4 | 150.   Servicer violated Cal. Civ. Code § 2924.10 by failing to provide a timely written
5 | acknowledgment of the receipt of Plaintiffs' and the class members loss mitigation applications
6 | which was required to include the following information:

7 | a. A description of the loan modification process, including an estimate of when a
8 | decision on the loan modification will be made after a complete application has
9 | been submitted by the borrower and the length of time the borrower will have to
10 | consider an offer of a loan modification or other foreclosure prevention
11 | alternative.

12 | b. Any deadlines, including deadlines to submit missing documentation, that would
13 | affect the processing of a first lien loan modification application.

14 | c. Any expiration dates for submitted documents.

15 | d. Any deficiency in the borrower's first lien loan modification application.

16 | ## Violation of § 2924.11

17 | 151.   Servicer violated Cal. Civ. Code § 2924.11 by collecting late fees for periods during
18 | which Plaintiffs' complete first lien loan modification application was outstanding. Plaintiffs are
19 | informed and believe that the class members experienced the same violations.

20 | ## Violations of § 2924.17

21 | 152.   Section 2924.17 of HBOR requires that any notice of default, notice of sale,
22 | assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage
23 | servicer in connection with a foreclosure subject to the requirements of Section 2924, or a
24 | declaration or affidavit filed in any court relative to a foreclosure proceeding be accurate and
25 | complete and supported by competent and reliable evidence.

26 | 153.   Servicer had no legal right to record the NOD as the same was prohibited by law.
27 |
28 |

1    154.    Servicer violated Section 2924.17 of HBOR by failing to review competent and
2  reliable evidence prior to recording and filing the NOD. Plaintiffs are informed and believe that the
3  class members experienced the same violations.

4    155.    Servicer violated Section 2924.17 of HBOR by recording an inaccurate NOD.
5  Plaintiffs are informed and believe that the class members experienced the same violations.

6    156.    Based upon these material violations of Cal. Civ. Code § 2924.17, Plaintiffs and
7  class members are entitled to an injunction under Cal. Civ. Code § 2924.12 stopping any further
8  foreclosure action against the Property, a rescission of the Notice of Default, and an award for
9  attorney's fees and costs. Plaintiffs further allege that Defendants' violation of these provisions of
10  the HBOR was willful or reckless.

11                            **THIRD CAUSE OF ACTION**

12           **VIOLATIONS OF CALIFORNIA'S HOMEOWNER BILL OF RIGHTS**

13                                       **(TRUSTEE)**

14  *(By Plaintiffs, on behalf of the proposed California Trustee Class Against Defendant Trustee*

15                                *(Including DOES 1-50))*

16    157.    Plaintiffs reallege and incorporate by reference all previous paragraphs and
17  allegations above as though fully set forth herein.

18    158.    On September 14, 2020, at a time when no foreclosure auction had been scheduled,
19  Plaintiffs requested a loan modification under California's Homeowner Bill of Rights (*"HBOR"*)
20  by delivering a full and complete loan modification application to Servicer which contained all of
21  the information required by Servicer in order to make a final decision on Plaintiffs' loan
22  modification application. Any and all additional information required or requested by Servicer was
23  delivered on or before October 15, 2020. Plaintiffs are informed and believe that the class members
24  submitted complete loan modification application to Servicer and that Trustee had knowledge of
25  such submissions.

26

27

28

                                          39
                            **CLASS ACTION COMPLAINT**

## Violation of § 2923.6

159. Trustee violated Cal. Civ. Code § 2923.6 by recording the NOD while Plaintiffs first lien loan modification application was pending. Plaintiffs are informed and believe that the class members experienced the same violations.

160. Based upon these material violations of Cal. Civ. Code § 2923.6, Plaintiffs and the class members are entitled to (a) an injunction under Cal. Civ. Code § 2924.12 stopping any further foreclosure action against their properties until such time that the violations of law are cured by rescission of the void notice of default and/or notices of trustee's sale and (b) an award for attorney's fees and costs. Plaintiffs and the class members further allege that Defendants' violation of these provisions of the HBOR was knowing, malicious, willful and reckless.

## Violation of § 2924.17

161. Section 2924.17 of HBOR requires that any notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding be accurate and complete and supported by competent and reliable evidence.

162. Trustee had no legal right to record the NOD as the same was prohibited by law.

163. Trustee violated Section 2924.17 of HBOR by failing to review competent and reliable evidence prior to recording and filing the NOD. Plaintiffs are informed and believe that the class members experienced the same violations.

164. Trustee violated Section 2924.17 of HBOR by recording an inaccurate NOD. Plaintiffs are informed and believe that the class members experienced the same violations.

165. Based upon these material violations of Cal. Civ. Code § 2924.17, Plaintiffs and the class members are entitled to (a) an injunction under Cal. Civ. Code § 2924.12 stopping any further foreclosure action against their properties until such time that the violations of law are cured by rescission of the void notice of default and/or notices of trustee's sale and (b) an award for attorney's fees and costs. Plaintiffs and the class members further allege that Defendants' violation of these provisions of the HBOR was knowing, malicious, willful and reckless.

1 **FOURTH CAUSE OF ACTION**

2 **VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

3 **(SERVICER)**

4 *(By Plaintiffs, on behalf of the proposed Nationwide Class and California Servicer Class Against*

5 *Defendant Servicer (Including DOES 1-50))*

6 166. Plaintiffs reallege and incorporate by reference all previous paragraphs and
7 allegations above as though fully set forth herein.

8 167. The Federal Fair Debt Collection Practices Act (*"FDCPA"*), 15 U.S.C. §§ 1692 *et.*
9 *seq.*, prohibits the use of false, deceptive, misleading, harassing, abusive and offensive conduct by
10 debt collectors during collection of consumer debts.

11 168. Plaintiffs and members of the class are natural persons and "consumers" as defined
12 under 15 U.S.C. § 1692a(3).

13 169. The obligation between the parties is a "debt" owed as defined under 15 U.S.C.
14 § 1692a(5) pursuant to the subject note and deed of trust.

15 170. Servicer is a "debt collector" as defined under 15 U.S.C. § 1692a(6), as Servicer
16 regularly attempts to collect debts owed to others through its mortgage servicing division.

17 171. Servicer has engaged in acts or omissions prohibited by the FDCPA

18 172. A claim under the FDCPA is evaluated from the perspective of the least
19 sophisticated consumer regardless of whether the consumer is represented by counsel.

20 **Violations of 15 U.S.C. § 1692e**

21 173. Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, deceptive, or
22 misleading representation or means in connection with the collection of any debt. This prohibition
23 includes any false representations about "the character, amount, or legal status of any debt" along
24 with any representation or implication that nonpayment of any debt will result in sale of any
25 property of any person unless such action is lawful.

26 **False Deadline for Loss Mitigation Review**

27 174. Pursuant to HBOR, Servicer is obligated to review any complete loss mitigation
28 application if the same is submitted at least 5 business days prior to a schedule foreclosure auction.

1    175.    On February 27, 2020, Servicer falsely stated that Plaintiffs would not be eligible
2 for any loss mitigation options if a loss mitigation application was not received "at least seven (7)
3 days before a scheduled foreclosure sale." Servicer repeated this same improper threat in another
4 letter dated August 13, 2020, which indicates a pattern and practice of falsely claiming that
5 borrowers' eligibility for loss mitigation is dependent upon a false deadline.

6    176.    Servicer violated 15 U.S.C. § 1692e(5), by threatening to take an action (i.e.,
7 refusing to review valid and lawful loss mitigation requests) when Servicer knew that such action
8 was in violation of state and federal law. Plaintiffs are informed and believe that the class members
9 experienced the same violations.

10                        **Illegal NOD – Illegal Threat of Foreclosure**

11    177.    Pursuant to HBOR and RESPA, Servicer was prohibited from recording the Notice
12 of Default on October 20, 2020.

13    178.    Servicer recorded the NOD in the public records and used the illegal threat of
14 foreclosure to continue its debt collection against Plaintiffs.

15    179.    Servicer violated 15 U.S.C. § 1692e(5), by threatening to take legal action
16 (continuation of the foreclosure process and setting of a foreclosure sale date) which Servicer knew
17 was prohibited by state and federal law. Plaintiffs are informed and believe that the class members
18 experienced the same violations.

19                        **Communicating False Credit Information**

20    180.    Servicer violated 15 U.S.C. § 1692e(8), by communicating credit information to the
21 Trustee and to the public regarding the Notice of Default (the purported right to foreclose on the
22 defaulted debt) which Servicer knew or should have known to be false as that action is prohibited
23 by state and federal law. Plaintiffs are informed and believe that the class members experienced
24 the same violations.

25                        **Illegal Demand for Amounts Not Due**

26    181.    Servicer violated 15 U.S.C. §§ 1692e(2)(A) when Servicer demanded Plaintiffs to
27 pay $42,492.03 "as quickly as possible" to avoid the "negative impacts to your credit rating
28 resulting from late payments and to avoid foreclosure" in the November 16, 2020 demand letter.

1 Servicer was aware that all such amounts were included in the RESPA Covid-19 Forbearance Plan
2 and were not collectible until Plaintiffs refinanced, sold the home, or came to the end of the
3 mortgage term, none of which occurred at the time of the illegal demand by Servicer. Plaintiffs are
4 informed and believe that the class members experienced the same violations.

5     182.   Servicer violated of 15 U.S.C. § 1692e(4) by making false representations of the
6 character, amount and legal status of the amounts purportedly due in the November 16, 2020
7 demand letter and also made improper and illegal threats regarding Plaintiffs' credit and risk of
8 foreclosure and loss of property. Plaintiffs are informed and believe that the class members
9 experienced the same violations.

10    183.   Servicer violated 15 U.S.C. § 1692e(5) by threatened to take action (negative credit
11 reporting and foreclosure) in the November 16, 2020 demand letter which Servicer knew it could
12 not legally take. Plaintiffs are informed and believe that the class members experienced the same
13 violations.

14    184.   Servicer violated 15 U.S.C. § 1692e(8) by threatening to communicate false and
15 negative credit information as set forth in the November 16, 2020 demand letter. Plaintiffs are
16 informed and believe that the class members experienced the same violations.

17    185.   Servicer violated 15 U.S.C. § 1692e(10) by using a false representation and
18 deceptive means to collect the amounts demanded in the November 16, 2020 demand letter which
19 Servicer knew it could not legally collect at the time of the demand. Plaintiffs are informed and
20 believe that the class members experienced the same violations.

21                          **Violations of 15 U.S.C. § 1692f**

22    186.   Pursuant to 15 U.S.C. § 1692f, a debt collector may not use "unfair or
23 unconscionable means to collect or attempt to collect any debt."

24    187.   Servicer violated 15 U.S.C. § 1692f by the following actions:

25         a. Taking nonjudicial action by recording illegal foreclosure documents such as the
26             NOD to effect dispossession of Plaintiffs' Property and the class members
27             properties without the legal right.

28

                                    43
                         **CLASS ACTION COMPLAINT**

b. Charging, demanding and collecting foreclosure filing fees, foreclosure attorney fees and foreclosure recording fees. Plaintiffs have been charged thousands of dollars in foreclosure related costs and fees by Servicer which are not allowed under state and federal law.

c. Repeatedly threatening, in various letters and notifications, to take nonjudicial action to effect dispossession of Plaintiffs' and the class members properties at times and under circumstances which were and are prohibited by state and federal law.

d. Sending collection letters which had false, misleading and deceptive language regarding Plaintiffs' and the class members' right to a loss mitigation review and delaying the loss mitigation process in order to charge and collect additional costs and fees.

e. Making demands for full payment of amounts purportedly outstanding when Servicer knew that such amounts were not collectible at the time of demand.

f. Refusing to provide Plaintiffs and the class members with a single point of contact and allowing various employees to provide Plaintiffs and the class members with contradictory and false information during the loss mitigation process.

188.    As a result of the foregoing violations, Servicer is liable for statutory damages, in an amount to be determined at trial, but not less than $1,000 per violation, pursuant to 15 USC § 1692k(a)(2)(A) or, in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

189.    Plaintiffs and the class members have suffered actual damages as the proximate and actual cause and result of the violations of the FDCPA by Servicer to be determined at trial.

1    190.    As a result of the foregoing violations, Servicer should be enjoined from employing
2 ‖ any of the unlawful conduct, methods, acts, or practices under the FDCPA alleged herein or proven
3 ‖ at trial.

4    191.    As a result of Servicer's violations of the FDCPA, Plaintiffs and the class members
5 ‖ are entitled to actual and statutory damages, attorney's fees, and costs, and any other relief the
6 ‖ Court deems just and proper.

7                          **FIFTH CAUSE OF ACTION**

8        **VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

9                                  **(TRUSTEE)**

10      *(By Plaintiffs, on behalf of the proposed California Trustee Class Against Defendant Trustee*

11                              *(Including DOES 1-50))*

12    192.    Plaintiffs reallege and incorporate by reference all previous paragraphs and
13 ‖ allegations above as though fully set forth herein.

14    193.    For the purpose of 15 U.S.C. 1692(f)(6), Trustee is a "debt collector" as defined
15 ‖ under 15 U.S.C. § 1692a(6).

16    194.    Trustee has engaged in acts or omissions prohibited by the FDCPA.

17                          **Violations of 15 U.S.C. § 1692f**

18    195.    Pursuant to 15 U.S.C. § 1692f, a debt collector may not use "unfair or
19 ‖ unconscionable means to collect or attempt to collect any debt."

20    196.    Trustee violated 15 U.S.C. § 1692f(6) by the following actions:

21              a. Repeatedly threatening, in various letters and notifications, to take nonjudicial
22                  action to effect dispossession of Plaintiffs' Property at times and under
23                  circumstances which were and are prohibited by state and federal law. Plaintiffs
24                  are informed and believe that the class members experienced the same
25                  violations.

26              b. Taking nonjudicial action by recording the NOD to effect dispossession of
27                  Plaintiffs' Property without the legal right. Plaintiffs are informed and believe
28                  that the class members experienced the same violations.

                                        45

1     197.    As a result of the foregoing violations, Trustee is liable for statutory damages, in an
2 amount to be determined at trial, but not less than $1,000 per violation, pursuant to 15 USC
3 § 1692k(a)(2)(A) or, in the case of a class action, (i) such amount for each named plaintiff as could
4 be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other
5 class members, without regard to a minimum individual recovery, not to exceed the lesser of
6 $500,000 or 1 per centum of the net worth of the debt collector; and in the case of any successful
7 action to enforce the foregoing liability, the costs of the action, together with a reasonable
8 attorney's fee as determined by the court.

9     198.    Plaintiffs and the class members have suffered actual damages as the proximate and
10 actual cause and result of the violations of the FDCPA by Trustee to be determined at trial.

11     199.    As a result of the foregoing violations, Trustee should be enjoined from employing
12 any of the unlawful conduct, methods, acts, or practices under the FDCPA alleged herein or proven
13 at trial.

14     200.    As a result of Trustee's violations of the FDCPA, Plaintiffs and the class members
15 are entitled to actual and statutory damages, attorney's fees, and costs, and any other relief the
16 Court deems just and proper.

## SIXTH CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA ROSENTHAL ACT

*(By Plaintiffs, on behalf of the proposed California Servicer Class & California Trustee Class,*
*Against All Defendants (Including DOES 1-50))*

21     201.    Plaintiffs reallege and incorporate by reference all previous paragraphs and
22 allegations above as though fully set forth herein.

23     202.    As alleged herein, and as set forth in detail above, Defendants have committed
24 violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788, et
25 seq. (*"Rosenthal Act"*), which incorporates by reference, and requires compliance with, the
26 provisions of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. The FDCPA
27 and, therefore, the Rosenthal Act, prohibits a debt collector from using "any false, deceptive, or

1  misleading representation or means in connection with the collection of any debt." 15 U.S.C. §
2  1692(e).

3      203.   Defendants are "debt collectors" within the meaning of California Civil Code §
4  1788.2(c) because Defendants conducted debt collection activities on Plaintiffs' and the class
5  members' "consumer debt." Plaintiffs and the class member are entitled to the protections of Cal.
6  Civ. Code §§ 1788 et seq. with respect to Defendants' collection activities related to the Loan.

7      204.   Defendants, through their agents, engaged in unfair and deceptive collection
8  practices in contravention to the Rosenthal Act. Defendants' actions alleged herein constitute
9  violations by Defendants of Cal. Civ. Code § 1788.17.

10      205.   Plaintiffs and the class members have suffered actual damages as the proximate and
11  actual cause and result of the violations of the Rosenthal Act by Defendants to be determined at
12  trial.

13      206.   As a proximate result of Defendants' violations of the Rosenthal Act, Defendants
14  are liable for actual and statutory damages, including general damages and special damages,
15  attorney's fees, and costs, and any other such relief the Court deems just and proper and in amounts
16  to be determined at trial pursuant to Cal. Civ. Code §§ 1788.17 and 1788.30(a).

17      207.   Additionally, because Defendants' violations of the Rosenthal Act were committed
18  willingly and knowingly, Plaintiffs and the class members are entitled to recover penalties of up to
19  $1,000 per violation as provided for in the Rosenthal Act.

20      208.   As a result of the foregoing violations, Defendants should be enjoined from
21  employing any of the unlawful conduct, methods, acts, or practices under the Rosenthal Act alleged
22  herein or proven at trial.

23  **SEVENTH CAUSE OF ACTION**

24  **NEGLIGENT LOAN SERVICING**

25  *(By Plaintiffs, on behalf of the proposed California Servicer Class Against Defendant Servicer*

26  *(Including DOES 1-50))*

27      209.   Plaintiffs reallege and incorporate by reference all previous paragraphs and
28  allegations above as though fully set forth herein.

210. Servicer owed a duty of due care to Plaintiffs and the class members in servicing the Loan and reviewing Plaintiffs' and the class members' loss mitigation applications.

211. Given the servicer-borrower relationship that existed between Servicer, on the one hand, and Plaintiffs and the class members, on the other hand, Servicer had a duty to properly process the loan modification applications, as well as provide proper notice of any rejection and appeal period as to the loss mitigation options and comply with all state and federal foreclosure laws, rules and regulations rather than simply proceeding with foreclosure when a loan modification and other workout options are being evaluated and processed (dual tracking).

212. Servicer breached its duty of due care owed to Plaintiffs and the class members by the actions alleged herein including, without limitation, the following:

a. Failing to send proper and accurate acknowledgment letters for documents received from Plaintiffs and the class members;

b. Failing to properly safeguard and account for documents received from Plaintiffs and the class members;

c. Failing to assign (and keep assigned) a competent single point of contact who complied with state and federal law;

d. Failing to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1);

e. Failing to identify all items needed to complete and finalize the loss mitigation applications;

f. Failing to properly process the loss mitigation applications;

g. Failing to properly communicate any issues or deficiencies with said applications;

h. Issuing and recording illegal notices of default; and

i. Making illegal demands for amounts that were not due at the time of the demand.

213.   Servicer's breach of its duty of due care is a direct cause of damage to Plaintiffs and the class members in amounts to be determined at trial.

214.   Servicer is not acting in a role as a "lender of money" but rather a business that has an obligation to truthfully and properly deal with their clients, follow all applicable state and federal laws, and keep the customer updated as to the current status of their contractual relationship. Servicer failed across the board in this regard and as such has negligently performed their duty, breached several state and federal laws, thus harming Plaintiffs and the class members.

215.   Servicer's breach was the actual and proximate cause of the foreclosure proceedings against the subject properties including Plaintiff's Property, as well as depriving Plaintiffs and the class members a meaningful opportunity to secure available loss mitigation and prevent commencement of foreclosure against their properties.

216.   Plaintiffs and the class members have been injured in that the foreclosure process was unlawfully initiated against their homes and Plaintiffs are now subject to imminent foreclosure; Plaintiffs and the class members expended considerable time, energy, and effort in preparing their financial information for their loss mitigation application, as well as considerable time and effort preparing, providing, and vouching for the truth of their financial information; Plaintiffs' and the class members' credit was severely damaged; thousands of dollars in foreclosure attorney's fees, excess interest, late fees, foreclosure fees, and other improper amounts were added to Plaintiffs' Loan balance and arrears that keep increasing due to Servicer's misconduct; Plaintiffs and the class members have expended additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

## EIGHTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

*(By Plaintiffs, on behalf of the proposed California Servicer Class & California Trustee Class Against All Defendants (Including DOES 1-50))*

217.   Plaintiffs reallege and incorporate by reference all previous paragraphs and allegations above as though fully set forth herein.

218.   Defendants conduct as alleged herein was negligent.

1     219.   Plaintiffs suffered serious emotional distress.

2     220.   Defendants' negligence was a substantial factor in causing Plaintiffs' serious
3 emotional distress. Emotional distress includes, *inter alia,* suffering, nervousness, humiliation,
4 anxiety, worry shock, and shame. Plaintiffs experienced emotional distress. Plaintiffs are informed
5 and believes the class members suffered the same or similar emotional distress as a result of
6 Defendants' conduct.

7     221.   Plaintiffs and the class members have been damaged, according to proof at the time
8 of trial, all in excess of the jurisdictional minimum of this Court.

9 

**NINTH CAUSE OF ACTION**

10 

**UNFAIR PRACTICES UNDER CALIFORNIA BUSINESS**

11 

**& PROFESSIONS CODE SECTION 17200, ET SEQ.**

12 

*(By Plaintiffs, on behalf of the proposed California Servicer Class & California Trustee Class*

13 

*Against All Defendants (Including DOES 1-50))*

14     222.   Plaintiffs reallege and incorporate by reference all previous paragraphs and
15 allegations above as though fully set forth herein.

16     223.   The UCL defines unfair business competition to include any "unlawful, unfair or
17 fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.

18     224.   A business practice is "unlawful" if it violates any established state or federal law.

19     225.   Defendants engaged in unfair acts in violation of Business and Professions Code
20 section 17200 by the following conduct:

21         &bull;  Defendants failed to comply with California law and specifically committed
22             illegal dual tracking on Plaintiffs' Property and the homes of the class members.

23         &bull;  Defendants failed to comply with Federal law under Regulation X of RESPA
24             and specifically committed illegal dual tracking on Plaintiffs' Property and the
25             homes of the class members.

26         &bull;  Defendants illegally threatened foreclosure on Plaintiffs' Property and the
27             homes of the class members in violation of HBOR and RESPA.

28

50
**CLASS ACTION COMPLAINT**

- Defendants failed to provide, and keep assigned, a proper point of contact as required by HBOR and RESPA.

- Defendants misled Plaintiffs and the class members into believing that Servicer intended to comply with state and federal law but, in fact, Servicer continued to dual-track Plaintiffs and the class members into foreclosure.

- Defendants illegally recorded notices of default against Plaintiffs' and the class members properties in violation of RESPA and HBOR.

- Defendants illegally recorded notices of trustee's sale against Plaintiffs' and class members' properties in violation of RESPA and HBOR.

- Defendants failed to acknowledge receipt of Plaintiffs' complete loss mitigation application in violation of RESPA and HBOR. Plaintiffs are informed and believe that the class members experienced the same violations.

- Defendants failed to properly identify any purported missing documents in Plaintiffs' and the class members' loss mitigation applications in violation of RESPA and HBOR.

- Defendants failed to provide a Single Point of Contact with the power to postpone the trustee's sale in violation of Civil Code § 2923.7.

- Defendants "dual tracked" Plaintiffs and class members into foreclosure while their complete loss mitigation applications remained pending in violation of RESPA and HBOR.

- Defendants made improper demands for payment of amounts that were not due and made improper threats in the collection of debt that was not due at the time of the demand.

226. Defendants' acts, omissions, misrepresentations, customs, practices and non-disclosures as set forth in this Complaint, whether or not in violation of any law, are otherwise unfair, unconscionable, unlawful and fraudulent.

1    227.    Plaintiffs and the class members have been injured and harmed directly by the acts
2  of Defendants, and each of them, committed in violation of Business and Professions Code Section
3  17200. As a result, Plaintiffs and the class members have suffered actual harm and damage.

4    228.    Plaintiffs and the class members have and will in the future, incur expenses and
5  costs which Plaintiffs and the class members are entitled to recover. Plaintiffs and the class
6  members are therefore entitled to injunctive relief and attorney's fees as available under California
7  Business and Professions Code § 17200 and related sections. These acts and practices, as
8  described in the previous paragraphs, are unfair and violate Business and Professions Code § 17200
9  because their policies and practices described above violate all the statutes previously listed, and
10 consequently, constitute an unlawful business act of practice within the meaning of Business and
11 Professions Code §17200.

12    229.    Defendants' conduct in dual tracking Plaintiffs' and the class members into
13 foreclosure without legal justification, with knowledge of said wrongful acts, and engaging in the
14 misrepresentations, deceits, and/or concealments of material facts as herein alleged was done with
15 the intention of thereby depriving Plaintiffs and the class members of property or legal rights and
16 was despicable conduct that subjected Plaintiffs and the class members to unjust hardship in
17 conscious disregard of Plaintiffs' and the class members' rights. Such conduct was willful,
18 oppressive, fraudulent, and malicious in that Defendants, and each of them, acted and/or failed to
19 act with the intent to injure Plaintiffs and the class members and/or in conscious disregard of their
20 rights. Plaintiffs and the class members are therefore entitled to punitive damages.

21                        **TENTH FIRSTCAUSE OF ACTION**

22                          **DECLARATORY RELIEF**

23    *(By Plaintiffs in their Individual Capacity Against All Defendants (Including DOES 1-50))*

24    230.    Plaintiffs reallege and incorporate by reference all previous paragraphs and
25 allegations above as though fully set forth herein.

26    231.    A dispute has arisen and a controversy exists between Plaintiffs and Defendants
27 relating to the validity of the pending foreclosure proceedings, in that Plaintiffs claim the pending
28 foreclosure proceedings are invalid and unlawful and any resulting trustee's sale void whereas

1  Defendants claim those proceedings are lawful and that Lender/Servicer and Trustee are entitled to
2  exercise the power of sale under the Deed of Trust.

3      232.    Plaintiffs therefore seek a judicial declaration that the Notice of Default and pending
4  foreclosure proceedings by Defendants against the Property are *void and of no effect and must be*
5  *cancelled or withdrawn* because (a) the Notice of Default was filed in violation of Civil Code
6  § 2923.6 and Regulation X, once Defendants comply with those sections, a new notice of default
7  must be recorded in order to re-commence the foreclosure process under Civil Code § 2924, *et seq.*;
8  (b) Defendants were not legally entitled to record the Notice of Default; and (c) Defendants are in
9  violation of the Homeowner Bill of Rights and Regulation X and cannot proceed with any
10 foreclosure activities, including a trustee's sale of the Property, until a written determination is
11 made on Plaintiffs' first lien loan modification application under HBOR and RESPA, and until
12 Defendants have fully and completely complied with all the applicable provisions of the HBOR
13 and RESPA as set forth in this Complaint.

14                                **PRAYER FOR RELIEF**

15     WHEREFORE, Plaintiffs and the class members pray for judgment as follows:

16     1.     For an order certifying the proposed class(es);

17     2.     For an injunction prohibiting the Defendants from concluding any trustee's sale of
18 the Property or issuing or recording any notice of trustee's sale or any trustee's deed upon sale
19 resulting from any such trustee's sale of the Property;

20     3.     For such other and further injunctive relief as is necessary to stop further dual
21 tracking against the Plaintiffs' and the class members' homes;

22     4.     For a declaration that (a) the Notice of Default and pending foreclosure proceedings
23 by Defendants against the Property, and any Trustee's Deed pursuant thereto, are void and of no
24 effect; (b) that the Notice of Default be immediately cancelled by the County Recorder, and (c) that
25 Defendants cannot proceed with any foreclosure activities, including issuing or recording a notice
26 of trustee's sale or conducting a trustee's sale of the Property, until Defendants' fully and
27 completely comply with Regulation X and HBOR;

28     5.     For Actual damages according to proof;

1    6.    For General damages according to proof;

2    7.    For Special and Punitive damages according to proof;

3    8.    For Statutory damages as permitted by law;

4    9.    For double or treble damages as permitted by law;

5    10.   For costs of suit incurred herein;

6    11.   For attorneys' fees incurred herein as permitted by law; and

7    12.   For such other and further relief as the Court may deem just and proper

8

9                          **DEMAND FOR JURY TRIAL**

10   Plaintiffs demand trial by jury of all claims so triable as a matter of right.

11

12   Dated: January 12, 2021                    VANTIS LAW FIRM

13

14                                       By: _____

15                                            Derek N. Lewis
                                              Attorneys for Plaintiffs
16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**